218 Cal.App.3d 1548 (1990)
267 Cal. Rptr. 764
In re JEFFREY P., a Person Coming Under the Juvenile Court Law.
MENDOCINO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
SHAWN P., Defendant and Appellant.
Docket No. A045762.
Court of Appeals of California, First District, Division Four.
March 23, 1990.
*1549 COUNSEL
Mary G. Swift for Defendant and Appellant.
Susan Massini, District Attorney, and Nancy Biggins, Deputy District Attorney, for Plaintiff and Respondent.
OPINION
CHANNELL, J.
In February 1989, the juvenile court found that 20-month-old Jeffrey P. (Jeffrey) came within the provisions of Welfare and *1550 Institutions Code section 300, subdivision (b).[1] (1) (See fn. 2.) It placed the child in the custody of respondent Mendocino County Department of Social Services. Appellant Shawn P. (Shawn), the child's father, appeals,[2] contending that (1) the juvenile court improperly established jurisdiction over Jeffrey because, while the child's mother might have been an unsuitable parent, he was not; and (2) the court erred in finding Jeffrey to be a dependent child because the department did not properly investigate his ability to provide the child with a suitable home. We affirm the judgment.

I. FACTS
In April 1987, Carla and Shawn P. were married. In May, their son Jeffrey P. was born. At the time of Jeffrey's birth, Carla was almost 16 and Shawn was 21 years old. The family lived together until early in 1988, when the parents separated. Carla and Shawn have begun marital dissolution proceedings, but the marriage appears not to have been dissolved yet. They agreed to shared custody of their son, but no court order formalized this arrangement.
From December 1987 until January 1989, the county child protective services and respondent Mendocino County Department of Social Services received numerous complaints about Carla's failure to care for Jeffrey. Some of these complaints came from Shawn. Carla moved 10 to 15 times during this period. She regularly left others to care for Jeffrey. At one point, Jeffrey's lack of weight gain was so acute that he was classified as a malnourished child. Meanwhile, a public health nurse worked with Shawn to feed the child enough to bring Jeffrey out of danger.
The department heard evidence of Carla's alcohol and drug use. Carla also admitted that she had been beaten by her boyfriend. Jeffrey had bumps, bruises, and cigarette-like burns on his body. Carla's roommate told the county that Carla twice grabbed Jeffrey by his ankle, carried him upside down, and tossed him into his crib. Finally, Jeffrey had not been brought in to his doctor for regular medical examinations or shots.
In January 1989, Jeffrey was taken into protective custody and placed in a foster home. The foster parent reported that Jeffrey bit and hit her, and *1551 her other children, during a three-day stay. The department petitioned the juvenile court for a dependency order. The petition alleged that Carla failed to provide her son with adequate food, clothing, shelter, and medical care; that her use of illegal drugs rendered her incapable of providing for her son's needs; that Jeffrey was often placed with strangers who had not willingly accepted responsibility for his care or had not been instructed about his needs; that his physical and emotional well-being were in grave risk; and that the child had been bruised as a result of Carla's neglect. (See § 300, subd. (b).)
At the detention hearing, Carla and Shawn were both advised of their constitutional rights. Shawn was represented by counsel at the hearing. In testimony, the public health nurse opined that the child should be removed from Carla's custody until she could stabilize her life. She declined to state an opinion about whether Jeffrey should be removed from Shawn's care. The juvenile court found insufficient grounds for detaining Jeffrey and continued the parents' shared custody, based on certain conditions that Carla had to meet. Both parents were ordered to cooperate with each other.
At the jurisdiction hearing, Shawn contested jurisdiction but Carla did not. Shawn argued that he was capable of caring for Jeffrey, that he had a stable home and a full-time job, and that he was willing to assume as much parental control as the court would allow. The district attorney stated that none of the allegations in the petition were directed at Shawn. Carla opposed granting sole custody to Shawn. The juvenile court found that Jeffrey came within the provisions of section 300, subdivision (b) and that it had jurisdiction over the child, but indicated that it would permit Shawn to file a motion for reconsideration of jurisdiction. The court continued the shared custody arrangement pending disposition.
Before disposition, Shawn filed written opposition to the petition, arguing that section 300 was not intended to apply to Jeffrey unless both he and Carla were unwilling or unable to protect and supervise the child. He contended that there had been no evidence that he had failed to supervise or protect his son. He moved that insofar as the petition affected him, it should be dismissed in the interests of justice. At the disposition hearing, the juvenile court found that its determination of jurisdiction was correct; it denied Shawn's motion for reconsideration. The social worker indicated that she was not certain that the dependency order could legally bind Shawn, but noted that he had agreed to meet certain conditions. Carla noted that Jeffrey's problems occurred during a period when Shawn was just as responsible for the child as she was. Therefore, she requested that all terms of the dependency order apply to Shawn, as well. Shawn asked that the court place Jeffrey with him.
*1552 A social worker testified that she had twice visited Shawn's home when he had lived with his father. She found Shawn to be cooperative. He also took and passed a drug test. This information had not been included in the department's report. The social worker testified that she had no evidence that Shawn might have caused some of Jeffrey's problems, nor did she think that he needed any individual counseling. She was somewhat concerned over certain conditions in Shawn's home and expressed the opinion that the department could assist the father in learning to deal with Jeffrey in an appropriate manner.
Ultimately, the juvenile court found the allegations of the petition to be true. Jeffrey was declared a dependent child and placed in the department's custody. However, he was permitted to reside with his parents as before. Some terms of the dependency order applied to Shawn. He was ordered to cooperate with the department's plan for Jeffrey, to attend parenting class, and to accept the services of a parent aide. An April 1989 report indicated that Shawn had met his responsibilities under the plan. The plan was to continue through October 1989.

II. SUITABILITY OF ONE PARENT
(2) Shawn contends that the juvenile court improperly established jurisdiction over Jeffrey. (See § 300, subd. (b).)[3] First, he argues that the juvenile court may not take jurisdiction over a child unless both parents are unsuitable. The department counters that the evidence below established that Shawn was not a suitable parent. However, the record does not show that the proceeding was directed at Shawn's conduct toward his child. Neither the petition nor the department's jurisdictional report focused on Shawn. The jurisdiction hearing concerned Carla's parenting ability. Evidence of Shawn's parenting skills was incidental, typically brought out in his questioning to establish that he was a suitable parent. A social worker, noting minor exceptions, did not object to Shawn getting custody of Jeffrey, nor did she think that the child had been injured while in Shawn's care. Finally, the juvenile court stated that it assumed jurisdiction over Jeffrey based on Carla's conduct, not Shawn's lack of suitability as a parent. The court was satisfied that subdivision (a) of section 301 authorized it to take jurisdiction *1553 over the child based solely on one parent's unsuitability as a parent. Therefore, we turn to the legal issue Shawn poses  whether that statute permits a juvenile court to take jurisdiction over a minor if only one parent is unsuitable.
Subdivision (a) of section 301 provides that a "juvenile court may assume jurisdiction over a child described in Section 300 regardless of whether the child was in the physical custody of both parents or was in the sole legal or physical custody of only one parent at the time that the events or conditions occurred that brought the child within the jurisdiction of the court." Shawn contends that this language is ambiguous and urges us to reject an interpretation of it that would permit a juvenile court to take jurisdiction over a child without a finding that both parents are unsuitable.
We have found no case law discussing the intent of this statute. There is little in the way of legislative history, either. A task force of the Senate Select Committee on Children and Youth issued a report in January 1988 to document the intent of several measures passed in 1987, including section 301. (See Stats. 1987, ch. 1485, § 7.5.) The report stated that subdivisions (a) and (c) of section 301 and section 304 were intended to bring "all matters relating to a dependent child, including custody issues, within the jurisdiction of the juvenile court...." Subdivision (c) of section 301 states that when "a minor is adjudged a dependent of the juvenile court, any issues regarding custodial rights between his or her parents shall be determined solely by the juvenile court, as specified in Sections 304, 361.2, and 362.4, so long as the minor remains a dependent of the juvenile court." Former section 304 stated that when "a minor has been adjudged a dependent child of the juvenile court pursuant to subdivision (c) of Section 360, no other division of the superior court may hear proceedings pursuant to Section 4600 of the Civil Code regarding the custody of the minor. While the minor is a dependent child of the court all issues regarding his or her custody shall be heard by the juvenile court...." (Stats. 1987, ch. 1485, § 8.)
Considering the statement of legislative intent and reading the cited provisions together, it appears that section 301, subdivision (a) was intended to establish the primacy of juvenile court custody orders over orders entered in marital dissolution proceedings. It is not clear whether this statute was also intended to apply to situations such as the one this case presents us with  when there is no custody order pursuant to a marital dissolution. However, given that the juvenile court would have had authority to countermand a superior court custody order, it appears unlikely that the Legislature intended a different rule if the child custody arrangement were an informal one. Therefore, it appears that the juvenile court was specifically authorized to assume jurisdiction over a child described in section 300, despite the fact *1554 that the child was in the shared physical custody of both parents at the time that the events occurred that brought the child within the jurisdiction of that court. (§ 301, subd. (a).)
Our conclusion is bolstered by case law that predates this statute. The department of social services "is not required to prove two petitions, one against the mother and one against the father, in order for the court to properly sustain a petition [pursuant to § 300] or adjudicate a dependency." (In re La Shonda B. (1979) 95 Cal. App.3d 593, 599 [157 Cal. Rptr. 280].) "A petition is brought on behalf of the child, not to punish the parents. [Citation.] The interests of both parent and child are protected by the two-step process of a dependency proceeding, with its separate adjudication and disposition hearings. Thus, when [the department] makes a prima facie case under section 300 by proving the jurisdictional facts at the adjudication hearing, it is not improper for the court to sustain the petition; not until the disposition hearing does the court determine whether the minor should be adjudged a dependent." (Ibid.) As the evidence established the necessary facts about Carla's lack of parenting skills, the juvenile court properly found that Jeffrey came within the jurisdiction of section 300, despite the fact that Shawn appears to have been a suitable parent.

III. FAILURE TO INVESTIGATE
(3) In the alternative, Shawn contends that the juvenile court erred in finding Jeffrey was a dependent child, because the department did not investigate his home. He complains that this failure to investigate effectively deprived him of the ability to contest the court's establishment of dependency because he could not demonstrate that he was a suitable parent. Shawn asks that we remand this case for an investigation of his fitness to provide his son with a suitable home, and for a new disposition hearing based on the results of that investigation.
The department argues that the record contained sufficient evidence on which the juvenile court could determine that Shawn's home was not suitable. We disagree. The social worker had visited Shawn's home once, but not since he had moved to his new home. At the disposition hearing, she testified that she would need to visit Shawn's new home before she could recommend that he be given custody of Jeffrey. As the juvenile court assumed jurisdiction over Jeffrey based on Carla's conduct, it seems reasonable to infer that it did not find Shawn's home to be unsuitable. With no evidence of Shawn's new home before the court, a contrary finding would be without support in the record.
Therefore, we must determine whether the department must investigate both parents before declaring their child to be a dependent child under *1555 section 300. This issue involves the second half of the hearing process  the disposition hearing. At the disposition hearing, a parent must be given the physical custody of a minor unless this plan poses a substantial danger to the physical health of the minor. When there are two parents with separate homes, a minor who is removed from the home of an unsuitable parent must be placed with the other willing parent unless that placement would also be detrimental to the minor. (§§ 361, subd. (b), 361.2, subd. (a); In re Tasman B. (1989) 210 Cal. App.3d 927, 935 [258 Cal. Rptr. 716]; see In re La Shonda B., supra, 95 Cal. App.3d at p. 600 [former law].) However, the juvenile court chose not to take physical custody of Jeffrey from either of his parents. Instead, it gave custody of the child to the department and left physical custody of the child with Shawn and Carla. This choice was within the juvenile court's discretion. As there was no removal of physical custody, the court was not required to take the steps that Shawn urges.
The judgment is affirmed.
Anderson, P.J., and Poche, J., concurred.
NOTES
[1] All statutory references are to the Welfare and Institutions Code.
[2] Shawn P. filed a timely appeal from the juvenile court dependency order, an appealable order. (§ 395.) He also purports to appeal from the order denying his motion for reconsideration of jurisdiction. An order denying a motion for reconsideration is not an appealable order. (Rojes v. Riverside General Hospital (1988) 203 Cal. App.3d 1151, 1160-1161 [250 Cal. Rptr. 435].)

Carla, Jeffrey's mother, is not a party to this appeal.
[3] Subdivision (b) of section 300 provides that a minor who "has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent ... to adequately supervise or protect the minor, or the willful or negligent failure of the minor's parent ... to adequately supervise or protect the minor from the conduct of the custodian with whom the minor has been left, or by the willful or negligent failure of the parent ... to provide the minor with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent ... to provide regular care for the minor due to.... substance abuse" is within the jurisdiction of the juvenile court, which may adjudge the minor to be a dependent child of the court.