[No. A047608. First Dist., Div. Three. Apr. 29, 1991.]

Estate of JOSEPHINE SIMONCINI, Deceased.
FORESTO SIMONCINI, as Executor, etc., Petitioner and
Respondent, v.
FEDORA DeMARTINI, Objector and Appellant.

**COUNSEL**

Schaefer, Walker & DeMartini, Chris A. Schaefer and Daniel Chester for Objector and Appellant.

Amitai Schwartz for Petitioner and Respondent.

**OPINION**

**MERRILL, J.**—Fedora DeMartini appeals from a decree of preliminary distribution in the probate of the estate of Josephine Simoncini, her mother. We affirm.

I

Josephine Simoncini died testate on October 16, 1988. She had two children: a son, respondent Foresto Simoncini; and a daughter, appellant Fedora DeMartini. On December 9, 1988, the decedent's will (the Will) was admitted to probate. Shortly thereafter, respondent Foresto Simoncini was appointed executor of his mother's estate (the Estate).

The decedent's Will provided generally for the division of her Estate between appellant and respondent. In paragraph fourth of the Will, the decedent left her personal property to appellant and respondent "in equal proportion, share and share alike, but if he [*sic*] shall have predeceased me, then all to the survivor of them."[1] Similarly, paragraph fifth of the Will provided that "all of the rest, residue and remainder" of the Estate, "whether the same be real, personal or mixed, of every kind and character," was to be given and devised to appellant and respondent "in equal proportion, share and share alike, or if either have predeceased me, then all to the survivor of them;" with provision for surviving lawful issue to take by right of representation in the event appellant or respondent have predeceased decedent.[2]

The sixth paragraph in the Will, the focus of dispute in this appeal, dealt with the decedent's real property. This paragraph provided, in subparagraph (a) thereof, as follows: "If my son Foresto Simoncini should survive me, his distributive share of my estate shall include the real property owned by me at 2548-2550 Franklin Street, San Francisco, California, *which shall be valued at $400,000.00 for the purpose of this distribution.* This sum will probably exceed one-half of the net distributive value of my estate after taking into account the deductions for all ordinary and extraordinary costs and expenses of administration, taxes, expenses of last illness, funeral and burial and all lawful debts and claims payable by my estate. Therefore, my son shall pay to the executor no later than six months after my death or four months after the appointment of the executor of my estate, whichever first occurs, a sum equal to the amount by which the aforesaid stipulated value of said property exceeds one-half of the net distributive value of my estate computed as aforesaid." (Italics added.)

Subparagraph (b) of paragraph sixth stated that the provisions of the preceding subparagraph were applicable for the benefit of respondent's daughter, Lynn C. Simoncini, in the event of respondent predeceasing the testatrix. Subparagraph (c) provided that "[i]f either my son, FORESTO

---

[1] "FOURTH: I give and devise all of my automobiles, jewelry, silver, books, pictures, paintings, works of art, household furniture and furnishings, clothing, and other personal effects, to my children, FORESTO SIMONCINI and FEDORA DE MARTINI, in equal proportion, share and share alike, but if he [*sic*] shall have predeceased me, then all to the survivor of them."

[2] "FIFTH: I give and devise all of the rest, residue and remainder of all my property and estate, whether the same be real, personal or mixed, of every kind and character, wheresoever situate or however held, of which I may die seized or possessed, or in which I may have an interest or right of testamentary disposition or power of appointment at the time of my death, to my children, FORESTO SIMONCINI and FEDORA DE MARTINI, in equal proportion, share and share alike, or if either have predeceased me, then all to the survivor of them; provided, however, if either of said children predeceases me leaving lawful issue who survive me, then those issue shall take, by right of representation, the share that said child would have taken had he or she survived me."

SIMONCINI and/or his daughter, LYNN C. SIMONCINI , should be unable to pay the money required of them by the provisions of the preceding paragraphs, then my Executor is directed to borrow the amounts necessary for each of them by loans secured against the real property devised to them and, in such event, they shall assume such loan and they shall receive as their distributive share, such real property subject to the loan imposed as a lien thereon to provide the money necessary to comply with this will." The will was executed by the decedent and witnessed on October 4, 1988, twelve days before her death.

Respondent, as executor, filed a "Notice of Proposed Action," notifying his intention to borrow the sum of $200,000 on or after April 6, 1989, by means of a loan secured by the real property devised to him in the Will (hereafter the Franklin Street property), for the purposes set forth in paragraph sixth of the Will. Appellant objected, on the stated grounds that "the proposed action would be inconsistent with decedent's intent as expressed in her will . . . ."

On March 28, 1989, respondent, as executor of the Will, filed a petition for authority to borrow money with a loan secured by the Franklin Street property. The petition stated that under the provisions in paragraph sixth of the Will, the Franklin Street property "shall be valued at $400,000.00"; that this property was the only asset of the Estate; that respondent must pay to the Estate, through himself as executor, the amount by which "the aforesaid stipulated value ($400,000.00) exceeds one-half of the net Estate"; that "a payment of $200,000.00 is sufficient for this purpose"; that respondent was unable to pay this sum, and needed to borrow the money to do so; that paragraph sixth of the Will provided that if respondent was unable to pay that sum, the executor was directed to borrow the necessary sum to pay appellant by means of a loan secured against the Franklin Street property; that the respondent had to pay to himself as executor the necessary sum by April 16, 1989; that the loan had already been approved and the funds were available; and that appellant had objected to respondent's action in this regard.

Respondent's petition went on to argue that appellant's objection was without merit because the proposed borrowing was directed by the Will itself; that the objection would disable respondent from obtaining the loan and paying the required funds to the Estate within the time prescribed by the Will (i.e., by April 16, 1989). The petition asked the probate court to authorize and direct the executor to proceed with the loan immediately, pursuant to the Will.

A hearing was held on respondent's petition on April 10, 1989. In papers filed before the hearing, appellant argued that paragraph sixth of the Will

was ambiguous, and she asked the court to construe the provision in that paragraph stipulating $400,000 to be the value of the Franklin Street property "as synonymous with the words 'fair market value.'" At the hearing, appellant again argued that paragraph sixth was ambiguous in light of the testatrix's intention, expressed elsewhere in the Will, "that the estate is to be split fifty-fifty." In reply, respondent argued that he was simply attempting to comply with the April 16 deadline for obtaining a loan, and that appellant was improperly using her opportunity to object to the loan as a pretext to contest the Will itself. The probate court overruled appellant's objections and granted respondent's petition for authorization to obtain the loan of $200,000 secured by the Franklin Street property.

On April 26, 1989, respondent filed an inventory and appraisement listing the Franklin Street property as the only asset in the Estate, and stating its appraised value to be $575,000. On April 28, 1989, respondent filed his first and final account and report as executor, together with a petition for settlement and final distribution of the Estate. The account stated that all known creditors and claims against the Estate, including taxes and expenses of administration but excepting attorney fees, had been paid; that the only asset in the Estate was the Franklin Street property; and that notwithstanding the appraised value of the Franklin Street property, the stipulated value of that property fixed by the Will for purposes of distribution was $400,000. The petition sought distribution of the Estate as follows: to appellant, the sum of $190,446.62, consisting of one-half of the $400,000 value of the Franklin Street property stipulated by the Will, less one-half of the costs and expenses of administration; and to respondent, the Franklin Street property, subject to the lien and encumbrance of the loan secured to pay appellant's share of the Estate. The petition also asked that any other property of the decedent or her Estate which was not then known be distributed in accordance with the Will if thereafter found or discovered.

Subsequently, respondent filed an amendment to the executor's final account and report, adding a new paragraph stating that the items of personal property referred to in paragraph fourth of the Will "were divided by mutual agreement" between appellant and respondent, "on or about February 5, 1989. By reason thereof, there is nothing to distribute in accord with this paragraph of said Will."

Appellant filed objections to the inventory and appraisement, the first and final account, and the petition for final distribution. Among other things, she argued that the decedent intended to divide her Estate equally between her two children, appellant and respondent, but that her intent was "undermined" by the provision in paragraph sixth giving respondent the Franklin

Street property and stipulating that that property "shall be valued at $400,000.00 for the purpose of this distribution." She asked the probate court either to ignore this language, or to delete it from the Will.[3] Although she contended that the language of the Will was ambiguous, appellant did not offer any extrinsic evidence to aid in its interpretation.[4]

A hearing on respondent's petition for final distribution and appellant's objections thereto was held on May 22, 1989. At the hearing, respondent's attorney, who had drafted the Will for the decedent, told the court that the decedent's intent had been for respondent to be able to continue living in the Franklin Street property with his daughter; that she was worried that "if there was an argument over the value, they might have to sell the property and he would have to leave the premises"; that "she was concerned that he could only qualify for X dollars" in order to divide the value of the Estate with appellant; and that she therefore told her attorney " 'I have to put a value on that property.' " The value she selected was not the fair market value of the Franklin Street property, but simply $400,000.

The probate court concluded that the Will was not ambiguous, and that it could only be read as setting forth a stipulated value for the Franklin Street property which was not subject to change by an appraisal or any other means for purposes of division of the property.[5] The probate court therefore

---

[3] Appellant raised the objection in the court below that respondent had failed to include certain items in the inventory and account, including articles of personal property, cash, life insurance, and a lawsuit for personal injuries in Hawaii. Respondent amended the inventory and account to explain the disposition of the decedent's personal property, and also informed the court of the status or disposition of the other items in the Estate, including the dismissal of the Hawaii personal injury lawsuit. On appeal, appellant has not raised this issue regarding the status or disposition of any other property formerly in the Estate; neither has she challenged the explanation given by respondent below.

[4] The only evidence which appellant submitted to the court with any relevance to interpreting the language of the Will and the testator's intent was a declaration from her attorney's legal secretary stating that she had spoken by telephone with an employee of the San Francisco Probate Referee's office, who told her that the appraisal of the Franklin Street property "may" have understated "the actual value" thereof, and that "the actual fair market value of the decedent's residence could be as high as $630,000.00." In her opening brief on appeal, appellant cites the statements in this declaration as the sole support for her statement that "[t]he Probate Referee's Office placed the value of the duplex [the Franklin Street property] variously at $575,000 and $630,000."

The declaration was clearly of no evidentiary value. In the first place, it was obviously hearsay. Moreover, it did not even purport to state facts; rather, it merely set forth the *opinions* of someone other than the declarant about the hypothetically *possible* value of real property. Thus, the only cognizable evidence in the record on the appraised value of the Franklin Street property is contained in the inventory and appraisement filed by respondent, which sets the value at $575,000.

[5] After careful review, an experienced trial judge stated: "I just can't read the Will any other way than Mr. Paolini [respondent's attorney] says. Even if you take out that clause, later

ordered the distribution of the Franklin Street property to respondent, subject to the lien, and $190,446.62 to appellant.

On June 2, 1989, appellant filed an application for reconsideration of the decree of preliminary distribution, alleging that "the true facts are different than those which were before the court at the time of its ruling." Appellant contended that respondent had failed to abide by the time limitations set forth in paragraph sixth, in that he had not deposited $200,000 into the Estate by April 16, 1989; that the time limitation was a condition precedent to the devise of the Franklin Street property in its entirety to respondent; and that in the failure of that condition precedent, "all assets must be distributed equally per Paragraph FIFTH of the Will." Appellant contended that the decree of preliminary distribution had been based on respondent's misrepresentation of facts concerning the timing of the $200,000 loan to the Estate, and that the probate court should therefore find that the devise of the Franklin Street property to respondent had failed. Appellant did not offer any evidence to show that the asserted new facts could not have been discovered with reasonable diligence prior to the May 22, 1989, hearing on the petition for preliminary distribution.

On June 9, 1989, appellant's attorney received a check for $190,446.62 from the escrow agent for the Franklin Street property. On October 2, 1989, the probate court denied the motion for reconsideration. This appeal followed.

## II

■ Appellant argues that the provision in paragraph sixth of the Will stipulating $400,000 to be the value of the Franklin Street property was ambiguous, in light of other references in paragraphs fourth and fifth to the testatrix's intention to give portions of the Estate to appellant and respondent "in equal proportion, share and share alike." She asks that we reinterpret the language in question, either by ignoring the reference to $400,000 altogether or by regarding it as, at most, "merely *an example* of what the property might be worth," a nonbinding indication of what the testatrix guessed the fair market value was. We disagree with appellant.

■ The basic rule in the interpretation and construction of any will is that the intention of the testator must be carried out as nearly as possible.

on, it states the stipulated value and, as he said, if. . . the property had gone down [in value], it still would have held at [$]400,000.

". . . . . . . . . . . . . . . . .

". . . I think you have to say that this house, she wanted the value of [$]400 [thousand] for the purposes of this division, and that's the only way I can interpret it."

(Prob. Code, § 6140, subd. (a); *Estate of Edwards* (1988) 203 Cal.App.3d 1366, 1371 [250 Cal.Rptr. 779]; *Estate of Austin* (1980) 113 Cal.App.3d 167, 173 [169 Cal.Rptr. 648]; *Estate of Newmark* (1977) 67 Cal.App.3d 350, 356-359 [136 Cal.Rptr. 628]; 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 244, pp. 278-280.) In ascertaining the testator's intent, courts employ an objective test: the intention to be determined is that which is *actually expressed* in the language of the will. (Prob. Code, § 6140, subd. (a); *Estate of Russell* (1968) 69 Cal.2d 200, 205 [70 Cal.Rptr. 561, 444 P.2d 353]; *Estate of Becker* (1969) 270 Cal.App.2d 31, 34 [75 Cal.Rptr. 359]; *Estate of Maloney* (1938) 27 Cal.App.2d 332, 335 [80 P.2d 998]; 12 Witkin, Summary of Cal. Law, *op. cit. supra*, § 244, p. 279.) " 'The intention which an interpretation of a will seeks to ascertain is the testator's intention as expressed in the words of the will, not some undeclared intention which may have been in his [or her] mind.' [Citation.]" (*Estate of Edwards, supra*, 203 Cal.App.3d at p. 1371.)

■ Another fundamental rule of the interpretation and construction of wills requires that every word should be considered and given some effect, if possible. (*Estate of Edwards, supra*, 203 Cal.App.3d at p. 1371.) "The words of a will are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative . . . ." (Prob. Code, § 6160.) Moreover, the words used in a will must be given their ordinary, commonsense interpretation. (Prob. Code, § 6162; *Estate of Edwards, supra*, 203 Cal.App.3d at p. 1371.) "All the parts of a will are to be construed in relation to each other and so as, if possible, to form a consistent whole. If the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the will." (Prob. Code, § 6161.) On the other hand, if the testator's intent can be determined from the words actually used in the will, the inquiry is ended. "That is, an unambiguous bequest cannot be affected by referring to other parts of the will." (*Estate of Edwards, supra*, 203 Cal.App.3d at pp. 1371-1372.)

The rules of interpretation were well summed up by the Court of Appeal in the case of *Estate of Keller* (1955) 134 Cal.App.2d 232 [286 P.2d 889]: "Over the centuries covering the history of wills and the probate thereof, many ingenious rules have been promulgated as aids in the interpretation of testamentary provisions which have been questioned. Throughout the numberless decisions on the subject, however, there has survived the cardinal rule that what the testator intended to accomplish is to be gathered if possible by giving the most ordinary interpretation to the language used without resorting to specious and fanciful reasoning. [Citations.] Courts are not invested under the guise of construction with the privilege of rewriting a testator's will. [Citations.] The testator's words and all of them should be considered in the light of common sense and given effect if it appears that

violence to this simple virtue will not result in so doing. [Citation.]" (*Id.*, at pp. 235-236.)

■ Application of these principles to the Will in this case leads us to the conclusion that the provisions at issue must be read as the court below has done: that is, as establishing a stipulated, fixed value of $400,000 for the Franklin Street property to be used in calculating the distribution of the Estate.

In our view, the language of the Will in this case is unambiguous. It is true, as appellant argues, that other provisions in the Will speak in terms of a division of the property in the Estate between appellant and respondent on the basis of equal proportions, "share and share alike." This fact does not permit us to overlook the very specific language of paragraph sixth, which specifies that respondent's distributive share of the Estate "shall include" the Franklin Street property, "which shall be valued at $400,000.00 for the purpose of this distribution." The Will reinforces the significance of this figure later in the same paragraph, in the provision requiring respondent to pay "a sum equal to the amount by which *the aforesaid stipulated value of said property* exceeds one-half of the net distributive value of my estate computed as aforesaid." (Italics added.) It is clear to us that although the general intent of the testatrix was to divide her Estate equally between appellant and respondent, her very specific intent with regard to her real property was to leave it to respondent; and that in order to facilitate that devise and ensure that the house would not have to be sold in order to effect an equal distribution of the Estate, she set a fixed, "stipulated" value on the Franklin Street property to be used in calculating the amount of appellant's share of the Estate.

In our view, any other interpretation of the Will would violate the principle that the words of a will must be interpreted so as to give every expression some effect, rather than in a way that will render other language of the will inoperative. This interpretation of the disputed language also satisfies the statutory requirement that all parts of the Will must be construed so as to form a consistent whole. (Prob. Code, § 6161.) Appellant's interpretation, on the other hand, would require us either to ignore specific language in the Will, or actually to rewrite it so as to render it entirely inoperative. This is not the function of this court. (*Estate of Keller, supra,* 134 Cal.App.2d at p. 236 ["Courts are not invested under the guise of construction with the privilege of rewriting a testator's will."].) We are not free to ignore the plain meaning of the words actually used by the testatrix in her Will. (Prob. Code, §§ 6160-6162; *Estate of Edwards, supra,* 203 Cal.App.3d at pp. 1371-1372; *Estate of Grove* (1977) 70 Cal.App.3d 355, 362 [138 Cal.Rptr. 684]; *Estate of Keller, supra,* 134 Cal.App.2d at p. 236.)

In short, the language of the Will setting forth a formula for distribution of the real property in the Estate to respondent and cash to appellant is clear and unambiguous. The probate court did not err in ordering preliminary distribution of the Estate on this basis.

## III

Appellant also appeals from the order denying her motion for reconsideration of the decree of preliminary distribution. She contends that the probate court erred in denying her application for reconsideration because her application purportedly met the requirements of Code of Civil Procedure section 1008, dealing generally with applications for reconsideration based upon an allegedly different state of facts. The contention is meritless.

■ Orders denying reconsideration are generally not appealable. (*In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1550, fn. 2 [267 Cal.Rptr. 764]; *Rojes* v. *Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1160-1161 [250 Cal.Rptr. 435], disapproved on other grounds in *Passavanti* v. *Williams* (1990) 225 Cal.App.3d 1602, 1605 [275 Cal.Rptr. 887].)

■ In any event, even if we assume for present purposes that appellant's purported appeal properly lies from the order denying reconsideration, the appeal has no substantive merit. At issue in appellant's application for reconsideration was the timing of respondent's required payment to the executor in accordance with the terms of the Will. Under the terms of paragraph sixth, subparagraph (a), respondent was directed to pay the executor the monetary differential between the $400,000 stipulated value and one-half of the net distributive value of the Estate "no later than six months after my death or four months after the appointment of the executor of my estate, whichever first occurs . . . ." This date was April 16, 1989.

However, under subparagraph (c) of paragraph sixth, if respondent "should be unable to pay the money required . . . by the provisions of the preceding paragraphs, then my Executor is directed to borrow the amounts necessary . . . by loans secured against the real property . . . ." No time limit is set for obtaining this loan. The six-month limitation only applied to respondent's obligation to pay cash into the Estate, if he had it.

Neither did the Will specifically require that appellant be paid within six months. Here, any delay in obtaining the loan was at least partially attributable to appellant's objecting to the executor's notice of intention to borrow the funds. In fact, the record shows that respondent had made all of the preparations for obtaining the funds by April 16, 1989, and had a loan

commitment by that time. Appellant actually received the funds due her not long thereafter, on or about June 9, 1989. There was no error, and no prejudice.

The decree of preliminary distribution is affirmed.

White, P. J., and Strankman, J., concurred.