[No. C029199. Third Dist. Aug. 3, 1999.]

GERALD REESE, Plaintiff and Appellant, v.
WAL-MART STORES, INC., et al., Defendants and Respondents.

**COUNSEL**

Donald P. Driscoll and Kevin G. Cronin for Plaintiff and Appellant.

Faustman, Carlton, DiSante & Freudenberger, David F. Faustman and Ronna S. Reed for Defendants and Respondents.

**OPINION**

**KOLKEY, J.—**

### INTRODUCTION

Plaintiff Gerald Reese appeals from an order denying his motion for class certification in his action against defendants Wal-Mart Stores, Inc., and

George Bronk, an employee at the Wal-Mart store located on Watt Avenue in Sacramento.[1] Plaintiff argues that the trial court utilized improper legal criteria in denying his motion for class certification. We disagree and shall affirm.

■ In an appeal from a decision denying class certification, a reviewing court will "not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]." (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23] (*Richmond*).) In other words, we will not substitute our judgment for that of the trial court as long as the trial court applied correct legal principles and assumptions, and did not abuse its discretion in arriving at its decision. (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750].)

■ In this case, the trial court did use the proper legal standard: whether substantial benefits would accrue to both the litigants and the courts from class treatment. (E.g., *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 459 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) Moreover, the trial court did not abuse its discretion in finding that plaintiff failed to demonstrate that substantial benefits would accrue from class treatment in this case. ■ A review of California Supreme Court decisions suggests that there are at least three different benefits from class treatment: redress for numerous aggrieved parties who could not otherwise maintain individual actions; the avoidance of the possibility of multiple actions; and the disgorging of the wrongdoer's unjust enrichment. (*Richmond, supra,* 29 Cal.3d at p. 469; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 714-715 [63 Cal.Rptr. 724, 433 P.2d 732] (*Daar*).) ■ In this case, the trial court did not abuse its discretion in determining that substantial benefits would not accrue from class treatment where (1) individual claims were viable without class treatment; (2) multiple lawsuits were unlikely in light of the fact that the only aggrieved party who had brought suit (the plaintiff) had deliberately generated his own injury; (3) class treatment would consume more time and expense than an adjudication of the pending case or a limited number of individual suits; (4) some form of effective class-wide relief was available without class certification through the unfair competition claim alleged by plaintiff; and (5) the statutory penalties sought by plaintiff and others could disgorge any unjust enrichment without resort to class certification.

■ Plaintiff also appeals from an order denying his motion for reconsideration. The order denying reconsideration is not appealable, and thus, the

---

[1]Since plaintiff's motion for class certification and appellate brief solely focus on Wal-Mart, for purposes of this appeal, all references to "defendant" will be to Wal-Mart only.

appeal therefrom is dismissed. (*Crotty* v. *Trader* (1996) 50 Cal.App.4th 765, 768-769 [57 Cal.Rptr.2d 818]; *Estate of Simoncini* (1991) 229 Cal.App.3d 881, 891 [280 Cal.Rptr. 393]; *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1550, fn. 2 [267 Cal.Rptr. 764].)

## I. *Factual and Procedural Background*

Plaintiff's complaint is directed at a "Ladies Day" promotional discount at which defendant purportedly offered female customers a lower price for a "lube express" oil change at various automotive repair facilities. ▉ In *Koire* v. *Metro Car Wash* (1985) 40 Cal.3d 24, 34 [219 Cal.Rptr. 133, 707 P.2d 195], the California Supreme Court held that "Ladies Day" and "Ladies Night" discounts offered by various car wash facilities and nightclubs, respectively, violated the provisions of the Unruh Civil Rights Act. The court reasoned that ". . . the Legislature established that arbitrary sex discrimination by business is *per se* injurious" (*id.* at p. 33), and that ". . . differential pricing based on sex may be generally detrimental to both men and women, because it reinforces harmful stereotypes." (*Id.* at p. 34.)

In his second amended complaint—the relevant pleading for purposes of this appeal—plaintiff alleges: "During 1994, 1995, and 1996, it was Wal-Mart's practice on each day designated at one of its locations as 'Ladies Day' (generally, each Tuesday) to charge male customers at that location one price (generally approximately $18.79) for an oil change, while charging female customers some lower price (generally approximately $15.00) for the exact same labor, services, and parts. Wal-Mart's corporate policy was to provide this weekly discount only to women. One of Wal-Mart's purposes in creating 'Ladies Day' was every day of the week to give women the opportunity to return on 'Ladies Day' for a discount. Each time that Wal-Mart charged a male oil-change customer more than defendants' 'Ladies Day' price, Wal-Mart committed gender-based price discrimination to the detriment of that male customer—regardless of the day of the week."[2]

Plaintiff alleges that on April 9, 1996, he took his automobile to defendant's store located on Watt Avenue in Sacramento for an oil change. Plaintiff was charged $18.79 for the service.

Plaintiff thereafter brought suit in May 1996. His second amended complaint (filed in April 1997) is brought on behalf of himself, a nationwide

---

[2]The record indicates that in addition to "Ladies Day," defendant's automotive department also offered a "Seniors Day" discount, but that both promotional programs were discontinued by defendant prior to the service of plaintiff's first amended complaint. Plaintiff never served his original complaint, filed in May 1996, on defendant.

class of males who paid for an oil change at Wal-Mart, and the general public. The first cause of action alleges defendant violated the Unruh Civil Rights Act (Civ. Code, §§ 51 and 51.5) by engaging in discriminatory business practices based on gender.[3] The second cause of action charges defendant with a violation of the Gender Tax Repeal Act (Civ. Code, § 51.6), premised on gender-based discriminatory pricing practices.[4] Plaintiff's third cause of action charges defendant with unfair competition in violation of Business and Professions Code section 17200 by reason of the violations alleged in the first and second causes of action.[5] In his prayer for relief, plaintiff asks, inter alia, for actual damages, treble damages of not less than $1,000 for each and every violation of Civil Code section 51, 51.5, or 51.6, "rescission and/or restitution to the general public and disgorgement for the benefit of the general public of any and all moneys received by Defendant[] as a result of these unlawful practices or acts," preliminary and permanent injunctive relief, and an award of attorney fees pursuant to Civil Code section 52.[6]

On or around June 13, 1997, pursuant to defendant's motion to strike, the trial court struck the "nationwide" allegations of plaintiff's class and further ruled that the applicable statute of limitations for a violation of the Unruh Civil Rights Act is one year.

---

[3]Civil Code section 51 states in relevant part:

"This section shall be known, and may be cited, as the Unruh Civil Rights Act.

"All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

Section 51.5 states in relevant part: "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or disability of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers."

[4]Civil Code section 51.6 states in relevant part:

"(b) No business establishment of any kind whatsoever may discriminate, with respect to the price charged for services of similar or like kind, against a person because of the person's gender.

"(c) Nothing in subdivision (b) prohibits price differences based specifically upon the amount of time, difficulty, or cost of providing the services."

[5]Business and Professions Code section 17200 prohibits any person or business establishment from engaging in unfair competition, which is defined as any unlawful, unfair, or fraudulent business practice.

[6]Civil Code section 52 provides that for each violation of section 51 or 51.5 of the Unruh Civil Rights Act and for each violation of the Gender Tax Repeal Act (see Civ. Code, § 51.6, subd. (d)), the violator is "liable for . . . the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than one thousand dollars ($1,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights [so] provided . . . ." (Civ. Code, § 52, subd. (a).)

Defendant thereafter moved for summary judgment on the grounds that the Unruh Civil Rights Act only applies to services and that plaintiff suffered no actual injury because he deliberately failed to request the "Ladies Day" discount. Defendant relied on deposition testimony which established that the "Ladies Day" discount at the Wal-Mart store in Sacramento was given to any customer who requested it, regardless of gender. Defendant also submitted excerpts from plaintiff's deposition, wherein plaintiff admitted that he had gone to the Wal-Mart store on the day in question because it was the Ladies Day special, "fully expecting to be discriminated against," and did not ask for the discount.

After defendant's motion for summary judgment was filed but before the hearing thereon, plaintiff filed his motion for class certification. (Code Civ. Proc., § 382.)

The motions were heard on January 20, 1998. The motion for summary judgment was denied. The motion for class certification, following argument, was taken under submission. By written order dated February 4, 1998, the trial court denied plaintiff's motion for class certification and ruled as follows: "There are many factors germane to the determination of whether to approve or deny class certification pursuant to [Code of Civil Procedure] section 382. Among those are whether substantial benefits will accrue to the litigants, the class, the public, and the courts, and whether it is likely that a high percentage of class members would ultimately come forward to prove separate claims to a portion of the total class recovery. [Citations.] In reviewing the evidence and papers submitted, the Court concludes that class certification should be denied. Since plaintiff personally will be compensated . . . fully if he prevails, including payment of his attorney fees, he does not benefit. The court does not benefit, since the time, effort, and expense of determining this case standing alone would be less than in a class action by many magnitudes. In this case, plaintiff is claiming that a class action would provide substantial benefits to the Court and the class members. At the present time, the court is not aware of any persons who claim that they were injured by defendant's practices other than plaintiff. Thus the Court does not find that in the absence of this class action, multiple lawsuits would occur nor would it be more efficient for class members than individual actions. Pursuant to Civil Code section 52, prevailing plaintiffs are entitled to a minimum amount of damages of $1,000, plus their attorney fees. There are enough incentives built into the statute that any person who truly feels aggrieved by defendant's Ladies Day practice will file suit. Absent a class suit, recovery by any of the class members is not unlikely. [Citation.] In sum, plaintiff has not shown that class action would be superior to individual claims. If at a later date a significant number of claimants file suits, the court could entertain a possible class action in any of those suits."

By motion filed on or around February 17, 1998, plaintiff moved for reconsideration of the order denying class certification. (See Code Civ. Proc., § 1008, subd. (a).) The motion was denied without argument.

## II. *Appeal From the Denial of Class Certification*

We first address plaintiff's appeal from the order denying his motion for class certification.[7]

### A. *The Standard of Review*

 The "[t]rial courts have great discretion with regard to class certification." (*Caro* v. *Proctor & Gamble Co.* (1993) 18 Cal.App.4th 644, 655 [22 Cal.Rptr.2d 419] (*Caro*).) "Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification." (*Osborne* v. *Subaru of America, Inc., supra*, 198 Cal.App.3d 646, 654.)

The parties to this appeal acknowledge, as the California Supreme Court has ruled, that absent other error, a reviewing court will "not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]." (*Richmond, supra,* 29 Cal.3d at p. 470.) Accordingly, " '[s]o long as [the trial] court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld.' [Citations.]" (*Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 764-765 [259 Cal.Rptr. 789]; accord, *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 199 [112 Cal.Rptr. 144].) Thus, we will not substitute our judgment of the suitability of class treatment for that of the trial court, as long as the trial court applied the proper legal principles and assumptions, and the ruling is supported by substantial evidence.

As demonstrated herein, the trial court in this case did apply the correct legal criteria, and its decision was supported by substantial evidence. Thus, we cannot disturb it. The scope of review compels the result in this case.

### B. *Analysis of the Trial Court's Ruling*

Code of Civil Procedure section 382 provides that a class action may be brought "when the question is one of a common or general interest, of many

---

[7]An order denying certification to an entire class is appealable. (*Richmond, supra,* 29 Cal.3d 462, 470; *Osborne* v. *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 652, fn. 2 [243 Cal.Rptr. 815].)

persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ."

■ "The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Richmond, supra,* 29 Cal.3d at p. 470.)

However, one must not lose sight of the fact that the class action statute "is based upon the equitable doctrine of virtual representation, which ' "rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice." ' [Citations.]" (*Daar, supra,* 67 Cal.2d at pp. 703-704.) The California Supreme Court has stated on a number of occasions that despite its general support of class actions, ". . . it has consistently admonished trial courts to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, 459; *Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755] (*Blue Chip Stamps*).) The Supreme Court has observed that "because group action is also capable of injustice, the representative plaintiff must show substantial benefit will result both to the litigants and to the court." (*Blue Chip Stamps, supra,* 18 Cal.3d at p. 385.)

### 1. *The Trial Court Utilized the Correct Legal Standard.*

■ In denying class certification, the trial court in this case properly cited and used the above-referenced standard in its ruling: "Among [the germane factors] are whether substantial benefits will accrue to the litigants, the class, the public, and the courts . . . ." Although the court's reference to "the public" is new in this formulation, its analysis does not suggest that it considered any additional parties beyond the litigants (including the class) and the court in assessing the benefits of class treatment. The court then found that a class action would not provide substantial benefits. Its conclusion again used the correct legal standard: "In sum, plaintiff has not shown that [a] class action would be superior to individual claims."

Hence, plaintiff's appeal is reduced to claiming that the trial court utilized an erroneous legal assumption elsewhere or did not base its ruling on substantial evidence.

2. *The Trial Court Did Not Use any Erroneous Legal Assumptions or Criteria.*

Plaintiff argues that the trial court's ruling was not based on sound legal assumptions in a number of respects:

(a) *The Court Properly Considered the Viability of Individual Lawsuits.*

Plaintiff takes issue with the court's statement that "[a]bsent a class suit, recovery by any of the class members is not unlikely." He argues that "none of the cases cited indicate that the existence of a potentially viable individual claim should undermine certification as the trial court implies." He relies on *Collins* v. *Rocha* (1972) 7 Cal.3d 232 [102 Cal.Rptr. 1, 497 P.2d 225] for the proposition that the possibility of a larger-than-nominal recovery for each class member does not militate against maintenance of a class action. (*Id.* at p. 238.)

We agree. The possibility of a larger-than-nominal recovery does not preclude class action treatment. But the trial court was not suggesting otherwise. In weighing the benefits of class treatment, it was merely observing that denial of class treatment would not burden potential class members since there were, as it stated, "enough incentives built into the statute [the Unruh Civil Rights Act] that any person who truly feels aggrieved by defendant's Ladies Day practice will file suit." Since one important function of class actions is to provide "small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation" (*Eisen* v. *Carlisle & Jacquelin* (2d Cir. 1968) 391 F.2d 555, 560; accord, *Blue Chip Stamps, supra,* 18 Cal.3d at p. 385; *Daar, supra,* 67 Cal.2d at p. 715), this was certainly a relevant (albeit not determinative) consideration in assessing whether class treatment would bring substantial benefits.

(b) *The Trial Court Properly Considered Whether Multiple Lawsuits Would Arise.*

 Plaintiff next cites as error the trial court's statement that "the court is not aware of any persons who claim that they were injured by defendant's practices other than plaintiff." As plaintiff puts it, "the [trial] court's ruling suggests a new, additional prerequisite to class certification: a demonstration that class members claim to be aggrieved prior to class notice. This requirement is altogether improper in that one reason for allowing a class action to proceed is because class members may not realize they have claims."

We do not read the trial court's statement as suggesting that class treatment should be denied simply because others have not filed claims. However, in the context of this case, the court could reasonably question whether class treatment was necessary to avoid the possibility of repetitious litigation: Although plaintiff's second amended complaint alleges defendant's Ladies Day special had been an ongoing promotion during 1994, 1995, and 1996, at the time plaintiff moved for class certification in January 1998, no one other than plaintiff had filed suit based on these business practices. And the record before the trial court disclosed that plaintiff—the one person who did file suit—had deliberately gone to Wal-Mart, rather than his normal automotive service, on the day in question for purposes of being denied the Ladies Day discount. And he had done so only *after* he was introduced to his counsel. Whereas most litigants consult with a lawyer after an injury to seek judicial redress, this client went to his lawyer to seek an injury for which he could claim judicial redress. We do not in any way express a view here on the propriety of such a practice. But on this record, where the only lawsuit on file was based on a self-generated injury, the trial court could reasonably conclude that it would likely not have to adjudicate a multiplicity of actions if the class was not certified.

In *Caro, supra*, 18 Cal.App.4th 644, the Court of Appeal found no error in the trial court's denial of class certification based, in part, on the finding that a "glut" of actions would not be filed. There, the plaintiff filed a class action complaint for fraud, negligent misrepresentation, unfair business practices, and false advertising, among other things, claiming defendants had falsely represented various Procter & Gamble "Citrus Hill" products to be fresh orange juice—whereas the orange juice was, in fact, reconstituted from frozen concentrate. The trial court denied class certification, stating, in part, " 'I don't believe there's going to be a glut of cases. I don't think that . . . this is going to ease the court's burden, and as a result, I am not going to certify the class.' " (18 Cal.App.4th at p. 657.) The *Caro* court affirmed the order denying class certification, finding nothing improper in such reasoning and concluding that the trial court acted within its discretion in determining that the plaintiff had failed to meet his burden of demonstrating that class treatment would substantially benefit both the litigants and the court. (*Ibid.*) (See also *Ratner* v. *Chemical Bank New York Trust Co.* (S.D.N.Y. 1972) 54 F.R.D 412, 414 [court denied class certification on the basis, inter alia, that "[n]o other member of the proposed class has evinced an interest in a lawsuit or brought a similar suit elsewhere . . ."].)

(c) *The Court Properly Compared the Benefits of Class Treatment to Multiple Individual Actions.*

Plaintiff also argues that "the trial court compared the benefits to the court and the parties using the single claim of the plaintiff himself as the measure

instead of the multiple claims of the *plaintiff class*." That argument takes a single sentence in the trial court's ruling out of context. The court did compare the time and expense of determining "this case standing alone" with a class action, but did so because it found that multiple lawsuits were not likely to occur: "In this case, plaintiff is claiming that a class action would provide substantial benefits to the Court and the class members. At the present time, the court is not aware of any persons who claim that they were injured by defendant's practices other than plaintiff. Thus, the Court does not find that in the absence of this class action, multiple lawsuits would occur . . . ."

Accordingly, in finding that class treatment had not been shown to be superior, the court weighed the benefits of class treatment compared to a single action because it found that multiple claims were not likely on the record before it. In a typical case, it would be speculative to make such an assumption, and a court should not uncritically assume that the absence of multiple actions reflects an absence of aggrieved parties. ▮ Nonetheless, a court may appraise "the extent and nature of other litigation already commenced by members of the class" in determining whether a class action is superior. (*Schneider* v. *Vennard* (1986) 183 Cal.App.3d 1340, 1347 [228 Cal.Rptr. 800].) ▮ In this case, the evidence reflected that no other aggrieved party had brought suit by January 1998—despite the visibility of the Ladies Day discounts in 1994, 1995 and 1996—and that plaintiff had deliberately gone to Wal-Mart, rather than his normal automotive service, on Ladies Day, in order to be denied the discount and become aggrieved.

Under these circumstances, we cannot state that it was an abuse of discretion for the trial court to find that multiple claims would not likely arise, and thus that class action treatment would not provide substantial benefits. We recognize that this state of the record later changed following plaintiff counsel's solicitation by mail of other customers, but that was not in the record at the time the trial court made its decision, upon which basis we must assess whether the trial court abused its discretion. Indeed, it would be eminently unfair to assess a trial court's exercise of discretion based on matters not before it at the time of decision.

### 3. *The Trial Court's Ruling Was Based on Substantial Evidence.*

Finally, the court's decision that plaintiff had not shown that substantial benefits would accrue from class treatment is supported by substantial evidence.

The decisions of the California Supreme Court have identified at least three types of benefits that can accrue from class treatment: Class treatment

can provide redress to numerous aggrieved parties who could not otherwise maintain individual actions (*Blue Chip Stamps, supra,* 18 Cal.3d at p. 385; *Daar, supra,* 67 Cal.2d at pp. 714-715), foster judicial economy by avoiding " 'the possibility of repetitious litigation' " (*Richmond, supra,* 29 Cal.3d at p. 469; *Daar, supra,* 67 Cal.2d at pp. 714-715), and avoid unjust enrichment of a wrongdoer (*Blue Chip Stamps, supra,* 18 Cal.3d at p. 385; *Daar, supra,* 67 Cal.2d at p. 715). On the record before us, substantial evidence supported the trial court's decision that plaintiff failed to show that any of these benefits would accrue from class treatment.

First, the trial court found that a class action would provide no benefit to plaintiff himself: "Since plaintiff personally will be compensated . . . fully if he prevails, including payment of his attorney fees, he does not benefit." As the trial court noted in its order, plaintiff will be fully compensated should he prevail on his Unruh Civil Rights Act claim, with damages of no less than $1,000, as well as payment of his attorney fees. (Civ. Code, § 52, subd. (a).)

Likewise, the court found that a class action was unnecessary to ensure that individual class members would be fully compensated for defendant's wrongdoing: "There are enough incentives built into the statutes that any person who truly feels aggrieved by defendant's Ladies Day practice will file suit." Plaintiff claims that this consideration and the court's consideration of the "potential viability of the representative's claim" were erroneous. As noted in part 2.(a) *ante,* we agree that the viability of individual claims cannot alone serve as substantial evidence to support the denial of class certification. But since one of the functions of a class action is to " 'provide small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation' " (*Richmond, supra,* 29 Cal.3d at p. 469), the trial court's focus on the "incentives" present for an aggrieved party to bring suit under the Unruh Civil Rights Act was certainly *a* relevant consideration in support of its determination that class treatment would not provide substantial benefits here. "Unavailability of a class suit does not create a practical barrier to recovery where the amount of each individual recovery is substantial and separate actions are economically feasible. . . ." (*Slakey Bros. Sacramento, Inc.* v. *Parker* (1968) 265 Cal.App.2d 204, 209-210 [71 Cal.Rptr. 269].)

Third, the court found that "[a]t the present time, the court is not aware of any persons who claim that they were injured by defendant's practices other than plaintiff," and thus the court did not find that "in the absence of this class action, multiple lawsuits would occur." This was an important finding in support of the trial court's ruling, since one reason to certify a class is to

avoid the possibility of repetitious litigation. (*Richmond, supra*, 29 Cal.3d at p. 469.) While the plaintiff disputes the evidentiary support for the court's finding, the record before the court showed that the only aggrieved party who had brought suit based on defendant's practices after four years was plaintiff, and he had deliberately generated his injury. (See pt. 2.(b), *ante*.)

Fourth, the trial court found that the court would "not benefit, since the time, effort, and expense of determining this case standing alone would be less than in a class action by many magnitudes." Plaintiff claims that this was also erroneous, but as shown in part 2.(c) *ante*, the expense and burden of a class action, balanced against an adjudication of plaintiff's claims, could properly be considered a factor against certification where multiple claims —in the absence of certification—appeared unlikely.

Finally, while the trial court did not make specific mention of it, the availability of some form of effective class-wide relief, without class certification, pursuant to plaintiff's claim on behalf of the general public under Business and Professions Code section 17200 et seq. also bolstered the court's conclusion that the benefits of class treatment were not demonstrated. ■ In a suit brought on behalf of the general public under section 17200, a court can "make such orders or judgments . . . as may be necessary to prevent the use or employment" of an unfair business practice, without certifying a class. (See Bus. & Prof. Code, § 17203; *Fletcher* v. *Security Pacific National Bank* (1979) 23 Cal.3d 442, 453-454 [153 Cal.Rptr. 28, 591 P.2d 51].) Indeed, Business and Professions Code section 17203 "authorizes a trial court to order restitution of money lost through acts of unfair competition, as defined in section 17200, whether or not the court also enjoins future violations." (*ABC Internat. Traders, Inc.* v. *Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1271 [61 Cal.Rptr.2d 112, 931 P.2d 290].) While the due process implications of ordering restitution for absent persons should be considered before doing so (see *Stop Youth Addiction, Inc.* v. *Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 582-583 & fn. 3 [71 Cal.Rptr.2d 731, 950 P.2d 1086] (conc. opn. of Baxter, J.)), plaintiff's unfair competition claim on behalf of the general public offers plaintiff the prospect of an alternative form of class-wide relief for purposes of deterring future violations— without class certification. (*Fletcher* v. *Security Pacific National Bank, supra*, 23 Cal.3d at pp. 453-454.) Several courts have also stated that the unfair competition statutes allow restitution for absent persons, without certifying a class, thereby avoiding unjust enrichment, which is one of the stated benefits of class treatment. (E.g., *Daar, supra*, 67 Cal.2d at p. 715 [". . . absent a class suit, defendant will retain the benefits from its alleged wrongs. A procedure that would permit the allegedly injured parties to recover the amount of their overpayments is to be preferred over the foregoing alternative"].)

In *Caro*, the Court of Appeal ruled that plaintiff "did not demonstrate class treatment was superior to an individual action" under Business and Professions Code section 17200 et seq. because the unfair competition statutes provided restitution " 'in favor of absent persons, without certifying a class action.' " (18 Cal.App.4th at p. 661.)

In *Dean Witter Reynolds, Inc.* v. *Superior Court, supra,* 211 Cal.App.3d at page 773, the Court of Appeal issued a peremptory writ of mandate vacating the trial court's order certifying the plaintiff's claims for unfair competition as a class because "[o]n the record before us, there is no basis for a finding that the class certification presents a superior method for adjudicating the unfair competition claims." The court observed that the unfair competition statutes empower the court "to grant equitable relief, including restitution in favor of absent persons, without certifying a class action." (*Ibid.*) The court added: "In contrast to the streamlined procedure expressly provided by the Legislature [under section 17200 et seq.], the management of a class action is 'a difficult legal and administrative task.' [Citation.] Its only apparent advantage to victims of an unlawful business practice, vis-à-vis an individual action under the unfair competition statute, is that it may theoretically afford them a better opportunity to protect their interests. [Citation.] Nothing in the record before the trial court, however, gave substance to this abstract possibility in the context of the present case." (*Dean Witter Reynolds, Inc.* v. *Superior Court, supra,* 211 Cal.App.3d at p. 773.)[8]

 While we do not decide here the scope of relief available under an unfair competition claim, and thus cannot be certain such a claim will avoid any unjust enrichment, we note that in this case, it will take only a limited number of individual claims under the Unruh Civil Rights Act, each seeking the minimum $1,000 statutory penalty, to eliminate any unjust enrichment resulting from the purported $3.79 overcharge to members of the class.[9]

Accordingly, in light of the seeming unlikelihood of multiple actions (given the unique circumstances that resulted in the institution of this action), the additional expense and burden of granting class treatment, the

[8]Both *Caro* and *Dean Witter Reynolds* did not consider the due process implications of ordering restitution for absent persons, and only considered whether an unfair business practice claim should proceed as a class action. However, the decisions do suggest that the equitable relief available under the unfair competition statutes can argue against the superiority of class treatment. And although equitable relief would not include the statutory penalties offered under the Unruh Civil Rights Act or the Gender Tax Repeal Act, the inability to obtain such penalties on a class-wide basis would not justify class treatment here because they are unnecessary to avoid unjust enrichment.

[9]For instance, it would take only 60 individual Unruh Civil Rights Act claims to recover a $3 overcharge extracted from a class of 20,000.

viability of individual claims, and the availability of some form of class-wide relief under the unfair competition statutes without class certification, it was not an abuse of discretion for the court to conclude that plaintiff failed to demonstrate class treatment would result in substantial benefits to the litigants and the courts. Since the trial court used proper legal criteria and based its judgment on substantial evidence, this court has no authority to substitute its judgment for that of the trial court. (*Caro, supra,* 18 Cal.App.4th at p. 655.) We affirm the trial court's order denying plaintiff's motion for class certification.

III. *Appeal From Denial of Reconsideration*

Following the entry of the trial court's February 4, 1998, order denying class certification, plaintiff moved for reconsideration pursuant to Code of Civil Procedure section 1008, subdivision (a).[10] The motion was accompanied by a declaration of counsel, who averred that his new or different facts "include that plaintiff now has new facts relating to the mass mailing plaintiff's counsel is conducting."

One month later, on March 16, 1998—well after the expiration of the 10-day period to file a motion for reconsideration based on new or different facts—counsel filed a supplemental declaration wherein he stated that he had sent letters to approximately 18,330 persons listed on invoices produced by defendant to inform them that his firm "might be able to represent them."

On March 24, 1998, counsel filed a second supplemental declaration, stating he had received "2,166 requests for representation," had "filed two actions in Sacramento Superior Court" that included "a total of approximately 166 plaintiffs," and intended to amend the complaint in one of those actions the following day to "assert causes on behalf of just over two thousand additional men." He calculated that 20 percent of the men contacted requested representation. Defendant argued that the 80 percent of purported class members who chose not to assert claims proved that the majority of class members did not want class treatment and that class treatment would not provide substantial benefits under those circumstances.

---

[10]Code of Civil Procedure section 1008, subdivision (a) states: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown."

The motion for reconsideration was denied, without argument, by the trial court.

Plaintiff now appeals from the order denying reconsideration. The order is not appealable. (*Crotty* v. *Trader*, *supra*, 50 Cal.App.4th at pp. 768-769; *Estate of Simoncini, supra*, 229 Cal.App.3d 881, 891.)[11] Section 904.1 of the Code of Civil Procedure does not authorize appeals from such orders, and to hold otherwise would permit, in effect, two appeals for every appealable decision and promote the manipulation of the time allowed for an appeal. *Glade* v. *Glade* (1995) 38 Cal.App.4th 1441 [45 Cal.Rptr.2d 695], is not to the contrary because the published portion of that opinion does not address the appealability of an order denying reconsideration.

If plaintiff needed more time to develop his record before his class certification motion was considered, he should not have filed the motion when he did.

## Disposition

The order denying class certification is affirmed. Plaintiff's appeal from the order denying reconsideration is dismissed. Defendant shall recover its costs on appeal.

Sims, Acting P. J., and Morrison, J., concurred.

---

[11] Plaintiff's motion for judicial notice is denied. It consists exclusively of documents originating after the expiration of the 10-day period for presenting new or different facts for a motion for reconsideration pursuant to section 1008 of the Code of Civil Procedure.