Filed 6/4/13  In re B.S. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re B.S. et al., Persons Coming Under the Juvenile Court Law. | B244847 |
| | (Los Angeles County Super. Ct. No. CK55809) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| BRIAN S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Rudolph A. Diaz.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Brian S. (Father) appeals from the juvenile court's jurisdictional and dispositional orders establishing dependency jurisdiction over his daughters B.S., Am.S., and S.S., and placing them in foster care. Father contends substantial evidence does not support the juvenile court's jurisdictional findings under Welfare and Institutions Code section 300, subdivisions (a), (b), and (j).[1] Father further contends the juvenile court abused its discretion by removing Am. from his care and by not placing B. and S. in his care. We affirm the juvenile court's jurisdictional and dispositional orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has seven daughters, including the three with Father, B. (born in Aug. 2004), Am. (born in Feb. 2006), and S. (born in Oct. 2007), who are the subjects of this appeal. Another child, Al.T. (born in Apr. 2009) was also a subject of the underlying section 300 petition.[2] Mother's history with the Los Angeles County Department of Children and Family Services (DCFS) began in 1993 with a referral alleging severe neglect of her daughter L.; additional referrals for neglect were reported in 1996, 2001, and 2004. The latter referral resulted in a police raid of the family home, during which several adults in the home were arrested and narcotics and firearms were seized. Numerous children were present in the home. The family received family maintenance services between June 2004 and June 2006. Still more referrals were made regarding the family in 2007, 2008, 2009, and 2010. A referral made in April 2010 regarding Father, that he failed to believe Am. (who lived with him) when she told him she had been sexually abused, was found to be substantiated. Other referrals were made regarding the condition of Mother's home, including that there was no food or utilities in the home.

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Al.T. is not Father's biological child and she is therefore not a party to this appeal.

In January 2012, a school nurse saw that B.'s teeth were rotted down to the gum line. The child also had an umbilical hernia. Mother was told about these conditions before the school's winter break and told to obtain dental care immediately. After winter break, B. did not return to school and a social worker was unable to assess Mother's home.

The referral which led to the current allegations against the family was made in May 2012. It was reported that seven-year-old B., four-year-old S., and three-year-old Al. were subjected to emotional abuse and caretaker absence, and that the children and Mother were homeless. Around 2:00 a.m., Mother engaged in a verbal and physical altercation in the children's presence. Mother broke a window when she tried to punch the woman with whom she was fighting. Mother appeared intoxicated and was placed under arrest along with her adult daughter, L., who was pregnant. The children were dirty and hungry. Mother later admitted she was drunk during the altercation.

The three girls were taken to a DCFS office. B. said Mother had been drinking prior to the altercation. B. told the social worker she and her sisters were staying with their "godparent," Jeff D. She said Jeff was nice to them. However, she had seen him smoke a "white rock" called "dope," which she said was something you sold to other people. B. said when Jeff smoked dope his eyes got big and red. S. told the social worker that Jeff also smoked "weed." B. said Mother and Jeff engaged in physical violence. She once saw Jeff drag Mother off the bed and into the shower with her clothes on, and had seen him slap Mother's face. B. also told the social worker she had seen Jeff on top of Mother and that "he was inside my mother's twa twa and [Mother] said stop and [Jeff] didn't and he never does." B. said Mother was crying during this incident. Jeff had slapped B. in the face, but Mother did nothing when B. told her about it. B. said Mother often left her and her sisters alone but she would not leave them alone for very long. Mother later denied any physical or sexual violence in her relationship with Jeff and denied Jeff physically abused her children. Mother denied leaving the children alone, stating she knew the law was that they had to be 12 years old to be left alone.

B. said Father lived with his girlfriend and B.'s younger sister, Am. B. said that on the night Mother was arrested Jeff called Father and told him to pick the children up but the police took them to the DCFS office before Father arrived. After several failed attempts to contact Father, a social worker finally spoke with Father. He seemed upset and uncooperative. The social worker asked if he would be able to assume custody of the children and he said he could not, stating various excuses. Father said he only had physical custody of Am. because he was bonded to her. He said he would call back after conferring with other family members and gave the social worker several telephone numbers for potential caregivers. Father refused to allow the social worker to interview Am.

Mother's 14-year-old daughter, Ax., was a member of a street gang and was a juvenile ward of the court. Another sister, D., who would have been five years old, had died in the hospital. S. had been shot in the back by a gang member when she was 15 months old, and B. had been stabbed when she was six years old. Al. had a scar on her leg from an incident in which a television had fallen on her leg in a motel room. Three-year-old Al. was observed by the social worker raising her middle finger and "flipping people off." B. said Al. learned that from Mother, who called the children bitches and would tell them "Fuck you." B. could not read or identify what sound letters made; she could only identify letters by name.

Father also had a one-year-old son who lived with him, and a 10-year-old son who lived with an aunt. In addition, Father had two other daughters who lived with their mother.

DCFS filed a section 300 petition on behalf of B., Am., S., and Al. on June 4, 2012. DCFS alleged that Mother and Jeff had a history of engaging in violent altercations in the children's presence, and Mother failed to protect the children from such incidents and allowed Jeff to have unlimited access to the children. Jeff physically abused B. by slapping her face and Mother failed to protect her from such conduct, thus placing the other children at risk as well. Mother engaged in a violent altercation with a neighbor in the children's presence, resulting in Mother's arrest. Mother had placed the

4

children in a detrimental, dangerous situation by leaving them home without adult supervision. Mother had a history of substance abuse and is a current abuser of alcohol, rendering her unable to properly care for the children. Mother allowed Jeff to use cocaine and marijuana and reside in the home with the children and have unlimited access to the children. Jeff possessed and used illicit drugs in the children's presence. Father was unable to provide care and supervision for B. and S., thus endangering their physical health, safety, and well-being.

At the detention hearing on June 4, 2012, the juvenile court found Father to be B.'s, S.'s, and Am.'s presumed father. The court found a prima facie case for detaining B., S., and Al. (and releasing Am. to Father's custody). The court found a prima facie case existed to establish that all the children were described by section 300, subdivisions (a) and (b).

On June 6, 2012, DCFS recommended to the court that B. and S. remain suitably placed and not be released to Father. DCFS noted that Father refused to care for the children when they were originally detained in late May 2012. B. said she and S. did not spend the night at Father's home but only spoke to him on the telephone and visited him occasionally. Father stated he was only bonded to Am. and demonstrated his lack of a relationship with B. and S. by failing to take action when notified they were being abused and neglected. Father told the social worker on June 5, 2012, that there was no need for the social worker to see his home because B. and S. were not going to stay with him. He also objected to the requirement that all of the adults residing in his home be interviewed. He called later the same day, however, and said the social worker could come to his home. He gave DCFS the contact information for a proposed caregiver, Ernestine M. During the investigations of previous referrals regarding the children, Father refused to meet with the social workers, saying the investigations had nothing to do with him. Father had spoken to a social worker in late November 2010 regarding a prior referral and at that time said he knew B. was not attending school. Father had merely said Mother was having a hard time because she had no money and no place to live.

A hearing was held on June 6, 2012, at which the court arraigned Mother on the petition and discussed whether B. and S. should be released to Father's custody. Father testified he had seen B. and S. in January, March, and April 2012. He said he had asked Mother if B. was in school and Mother had told him she was. When the children were detained in May 2012, he called B. and told her he was looking for a ride so he could pick the girls up. He told the social worker the same thing during subsequent phone calls and asked her to call him back after he had a chance to find someone to help him. He also gave DCFS contact information for Ernestine M., with whom the children could stay. The social worker did not call either of them back. He did as the social worker instructed and took Am. to a DCFS office to be interviewed. The social worker allowed him to leave with Am. when the interview concluded. He said he had room at his home for B. and S. to live with him.

The court found a prima facie case had been established to justify detaining B. and S. from Mother's and Father's custody. Father did not have a bond with them and he had either neglected or ignored their needs. B. was not attending school and Father should have known about that. In addition, the children's medical needs went unattended. DCFS was ordered to provide the family with reunification services. Mother and Father were granted monitored visitation with the children.

On June 20, 2012, DCFS reported that B., S., and Al. were in dire need of mental health services. B. expected to be made to leave whenever she misbehaved because Mother had sent her to stay with her aunt when she was bad. Al. and S. demonstrated signs of possible sexual abuse and Al. and B. threw frequent temper tantrums.

The social worker reported that Father was hostile and uncooperative. She recommended that the juvenile court order Father to permit the social worker to have face-to-face contact with Am. twice per month. The court so ordered.

DCFS filed a first amended petition on June 28, 2012, alleging Mother physically abused the children by slapping their faces and punching Am. in the stomach. Mother was incarcerated on May 30, 2012, for public intoxication, and failed to obtain timely medical care for B., whose teeth were rotted. As to Father, DCFS alleged that he knew or

6

reasonably should have known about the child's medical needs and failed to obtain timely medical care for her.

After conducting further interviews, DCFS filed a second amended petition adding the allegation that Father had created a detrimental lifestyle for B., Am., and S. in that he used drugs in the children's presence, left marijuana where the children had access to it, and engaged in domestic violence with his female companion in the children's presence, thus endangering the children's physical and emotional health, safety, and well-being.

DCFS's July 3, 2012 jurisdiction and disposition report indicated Father had a criminal history including a burglary arrest in 1994, a charge for possession of cocaine base in 2004, and several misdemeanor charges for possession of marijuana. The social worker interviewed Father and intended to read the specific allegations to Father, but he told her to put the petition away and said he would merely address the inaccuracies in DCFS's detention report. Father told the social worker he did not know anything about Jeff's relationship with the children. B. told the social worker that she referred to Father as "B." He once disciplined her by hitting her on the forearm and making her stand in a corner, leaving her there for an entire night.

Am. stated that Mother slapped her sometimes, most recently in February 2012. Am. said Mother had punched her in the stomach and that it caused her pain. Am. reported that Mother also slapped the other children in the face when they got in trouble. Am. told Father that Mother struck her and saw him telling Mother to stop abusing the girls. Mother admitted she hit the children on the hand but denied ever hitting them forcefully. She denied that Father ever told her to stop abusing the children.

B. said Mother became angry and frustrated when she drank. She said Mother mostly smoked marijuana with Jeff. Am. said Mother drank beer a lot and it made Mother mean. She had once asked Mother for some water and Mother gave her a beer to drink instead. Mother said she only drank one or two small cans of beer each day. She denied ever being drunk in the children's presence, but admitted being drunk on the night she had an altercation with a neighbor. Mother admitted she smoked marijuana but said she did not do so in front of the children.

7

Father explained to the social worker that after their daughter D. had died, Mother was upset and grieving so Father offered to care for the children. B. did not want to live with Father, but Am. did and came to live with him. Mother and Father had briefly reunited and conceived S. Father insisted he was ready and willing to assume custody of the children.

B. told the social worker that Father smoked marijuana in the living room. Sometimes Am. was present when he was smoking and would come into the bedroom complaining and crying because smoke had gotten in her face. B. said Father kept his marijuana in a medicine bottle with a white top. Several times she watched Father "roll the weed in a blunt, lick it and twist the blunt and smoke it." B. said Father's female companion, L.C., also smoked marijuana. B. once saw Father and L.C. fighting over a blunt. L.C. became so upset she grabbed a hammer and began smashing Father's laptop. Father called the police. The police came to the home and spoke to L.C. but did not arrest her. Am. said Father and L.C. would hit and punch each other when they were upset. She once saw L.C. bite Father. Am. said there was a lot of fighting in the home. L.C.'s two sons also lived in the home. One of the boys told the social worker Father was mean to him and would hit L.C. He wanted someone to help his mom, saying Father and L.C. fought night and day.

Father admitted he used marijuana and showed the social worker a medical marijuana card. He said he did not roll "blunts" in the children's presence. The social worker observed several "blunt roaches" (the butts of marijuana joints) in an ashtray in the living room. Father said the children never played in the living room. Father and L.C. merely laughed in response to the allegation that they engaged in physical violence with one another.

Father had not had any visits with the children during the month since the dependency proceedings commenced in late May. He explained he did not want to visit the children because they would become upset when the visits ended and they were not allowed to come home with him. He said he had been speaking to B. on the telephone.

8

DCFS recommended that the court declare the children dependents and provide family reunification services for Mother and Father.  It also recommended based on Am.'s and B.'s statements about the drug use and domestic violence in Father's home that Am. be detained from Father's custody.

On July 3, 2012, the court found a prima facie case for detaining Am., concluding she was a minor described by subdivisions (a), (b), and (j) of section 300, that substantial danger existed to Am.'s physical and emotional health and there were no reasonable means to protect her without removing her from Father's home.  Both Father and Mother were granted monitored visitation three times per week.  The matter was continued for further hearing.

DCFS reported on July 18, 2012, that Father had tested positive for marijuana.  The court continued the matter to August 24, 2012, for a new adjudication hearing.

DCFS reported on August 20, 2012, that Father had not made any attempt to initiate contact with the children; he merely returned their telephone calls.  Father and Mother had been provided with bus passes but neither had made any attempt to visit the children.  Father did not provide any explanation for failing to visit the children.

At the adjudication and disposition hearing on August 24, 2012, Mother was not present.  The parties had discussed amending certain language in the petition and Father submitted on the basis of the amended petition and the reports submitted by DCFS.  The juvenile court sustained the petition as amended.

The court declared the children dependents of the court and found by clear and convincing evidence that removal of the children from parental custody was necessary to ensure their safety.  The court ordered DCFS to provide family reunification services for Father and Mother.  Father was ordered to participate in a drug treatment program including aftercare and random drug testing, a domestic violence program, parenting classes, and individual counseling.

This timely appeal followed.

9

**DISCUSSION**

**I.      The Jurisdictional Findings and Order**

Before asserting jurisdiction over a minor, the juvenile court must find that the child comes within one or more of the categories specified in section 300. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) The burden is on DCFS to "'"prove by a preponderance of the evidence that the child . . . comes under the juvenile court's jurisdiction."'" (*Ibid.*, quoting *In re Shelley J.* (1998) 68 Cal.App.4th 322, 329.) "On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.] Substantial evidence is evidence that is reasonable, credible, and of solid value." (*Veronica G.*, *supra*, at p. 185.) Issues of fact and credibility are questions for the trier of fact, and we may not reweigh the evidence. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) "If there is any substantial evidence, contradicted or uncontradicted, which will support the judgment, we must affirm." (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.)

We review the juvenile court's jurisdictional findings under the substantial evidence standard. (*In re David M.* (2005) 134 Cal.App.4th 822, 829; *In re Heather A.* (1996) 52 Cal.App.4th 183, 193 (*Heather A.*).) Under this standard, we review the record in the light most favorable to the juvenile court's determinations to determine whether there is any reasonable, credible, and solid evidence to support the juvenile court's conclusions, and make all reasonable inferences from the evidence in support of the court's orders. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.) We review the juvenile court's dispositional orders for abuse of discretion. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for

10

jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. (*Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875-876.)" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) In addition, the section 300 petition need only contain allegations against one parent to support the exercise of the court's jurisdiction. (*In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554.) Thus, in order to successfully argue for reversal of the juvenile court's order adjudicating the children to be dependents of the court, Father would have to demonstrate that no basis exists for any of the jurisdictional findings made against either Mother or Father. Father has not attempted to refute the court's exercise of jurisdiction over the children based on Mother's conduct. Nonetheless, we will discuss the court's findings regarding Father in order to demonstrate that Father's contentions are without merit.

Father challenges the juvenile court's jurisdictional findings under section 300, subdivisions (a), (b), and (j) based on insufficiency of the evidence. Under subdivision (a), a child may be found to be a dependent of the court if the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent. Under subdivision (j), dependency may be based upon a finding that the child's sibling has been abused or neglected, as defined in subdivisions (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The evidence here showed that Mother inflicted excessive discipline on the children, slapping their faces and punching Am. in the stomach. Father apparently spoke to Mother and told her to stop, but to no avail. Father did not take action to prevent further abuse. In addition, the children were at risk of physical harm because Mother's lifestyle often left them without adequate food or shelter and exposed to Mother's erratic behavior and violent altercations with neighbors and her male companion.

Under section 300, subdivision (b), a child may be adjudged a dependent if the child has suffered, or there is a substantial risk that the child will suffer, serious physical

harm or illness, as a result of the failure or inability of her parent to adequately supervise or protect the child, or the willful or negligent failure of the child's parent to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent to provide regular care for the child due to the parent's mental illness, developmental disability, or substance abuse. Exposing children to domestic violence is a sufficient basis for a finding of jurisdiction under section 300, subdivision (b). (*Heather A.*, *supra*, 52 Cal.App.4th at p. 194.) "[D]omestic violence in the same household where children are living *is* neglect; it is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it. Such neglect *causes* the risk." (*Ibid.*) Father exposed the three girls to domestic violence in his own home. While the evidence was that he and L.C. fought over marijuana only once, it was a serious fight resulting in the police being summoned, and in any event the evidence showed that the two engaged in physical violence on a regular basis. Furthermore, Father failed to protect the children from Mother's drug and alcohol abuse and excessive physical discipline (including punching a young child in the stomach). He also failed to protect them by exposing them to his and L.C.'s marijuana use. Regardless of whether he had a medical marijuana card, he smoked marijuana in the children's presence, and the social worker had to tell him that leaving marijuana butts within the children's reach (including three-year-old S.) was unsafe.

In addition, the evidence showed that Father failed to take action when B. had serious medical concerns that needed to be addressed. Her teeth were in a deplorable condition, which could not have happened overnight but was instead the result of longstanding neglect. She also had an umbilical hernia which went untreated. B. was not attending school on a regular basis, and although Father claimed that he had regular contact with her, he was either unaware of the fact or not concerned enough to take action to remedy the situation. In summary, we readily find that substantial evidence supported the court's jurisdictional findings that the three children were found to be dependents

based on the harm they each had suffered because of Mother's and Father's respective behavior.

## II.     The Dispositional Order

Section 361, subdivision (c)(1) provides that a dependent child may not be removed from parental custody unless the juvenile court finds by clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and that there exist no reasonable means by which the minor's physical safety can be protected without removing the minor from the parent's physical custody.  Thus, "[t]he parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate."  (*In re Diamond H*. (2000) 82 Cal.App.4th 1127, 1136, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6.)

The court was justified in ordering that Father not be permitted to assume custody of B. and S., where the evidence supported a finding that Father had not shown adequate concern for their welfare in the past and failed to respond appropriately when the children were detained.  Furthermore, the conditions discovered in Father's home provided a sufficient basis for the court to conclude that Am. would be at risk of harm if she remained in his custody.  Father's home was the scene of ongoing domestic violence and regular marijuana use and was not a safe environment for young children.  The court's dispositional order removing Am. from his custody and ordering that visits be monitored is entirely appropriate.  Accordingly, we affirm the juvenile court's dispositional order.

## DISPOSITION

The orders challenged on appeal are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

SUZUKAWA, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

14