Filed 5/12/14  In re Ashley B. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ASHLEY B., a Person Coming Under the Juvenile Court Law. | B251692 |
| | (Los Angeles County Super. Ct. No. CK98976) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.L. et al,<br><br>Defendants and Appellants. | |

APPEALS from an order of the Superior Court of Los Angeles County, Stephen Marpet, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  As to J.L. the appeal is dismissed as moot.  As to William B., the appeal is dismissed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant J.L.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant William B.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

J.L. is the mother of Michel C. and Ashley B. Her husband, William B., is Ashley's presumed father. The juvenile court declared both children dependents of the court, removed Michel from J.L.'s care and custody and placed her under the supervision of the Los Angeles County Department of Children and Family Services (Department) for suitable placement, and removed Ashley from William's care and custody and placed her with J.L. under the supervision of the Department on condition William no longer reside in the family home. J.L. does not contest the findings and order as to Michel, who is now 18 years old. However, both J.L. and William appeal from the findings and order declaring Ashley a dependent child of the court. We dismiss William's appeal pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835 (*Phoenix H.*) and dismiss J.L.'s appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Initial Petition*

On April 12, 2013 the Department filed a section 300[1] petition as to Michel, then 17 years old, and Ashley, then 11 years old, alleging J.L. had physically and emotionally abused Michel and, since December 2012, had excluded Michel from the family home without making a plan for her care and supervision. The petition alleged J.L.'s conduct also placed Ashley at substantial risk of physical harm. Following a detention hearing, Michel was detained; Ashley was released to J.L. and William.

### 2. *The Amended Petition Adding Allegations Relating to William's Sexual Abuse*

On July 2, 2013 the Department filed an ex parte application pursuant to section 385 seeking to detain Ashley from William after social workers learned of allegations William had sexually abused Ashley's adult sister, Nelly M., when Nelly was a minor, and had behaved inappropriately and in a sexual manner toward his step daughter Michel. Pursuant to the Department's recommendation, the court ordered Ashley detained from William and released to J.L. provided William not reside in the family home.

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

On July 9, 2013 the Department filed an amended section 300 petition adding the sexual abuse allegations and asserting William's behavior placed both Michel and Ashley at substantial risk of sexual abuse. As to J.L., the amended petition alleged J.L. had been informed of William's conduct and had not adequately protected Michel or Ashley from the risk of sexual abuse.

3. *The Jurisdiction and Disposition Hearing*

At the contested jurisdiction hearing the Department presented evidence of J.L.'s physical and emotional abuse of Michel and failure to supervise her: J.L. had frequently slapped Michel, threw her to the ground by yanking her hair and, on at least one occasion, beat her with a broomstick. J.L. also repeatedly belittled Michel and called her names to such an extent that it caused Michel to have thoughts of harming herself. In addition, J.L. ordered Michel out of the home in December 2012 and refused to permit her to return without making any plan for her care and wellbeing. J.L. acknowledged most of the misconduct had occurred, but insisted Michel was a rebellious teenager who disrespected her and her rules.

As to allegations of William's sexual abuse and J.L.'s failure to protect Michel and Ashley from the risk of sexual abuse, Michel testified, consistently with her reports to social workers, that she had observed William sexually abuse her older sister Nelly when Nelly was a minor and still lived with the family. In particular, while returning home unexpectedly from elementary school, Michel had observed William rubbing his genitals against Nelly's bottom while Nelly was bent over in front of him. She believed Nelly and William were both fully clothed. Michel immediately reported the incident to her mother. J.L. confronted William; but when he denied any misconduct, J.L. believed him. When interviewed by social workers, Nelly confirmed the incident had happened as Michel described. Nelly also told social workers William had sexually abused her from

3

the time she was eight years old until she moved out of the home when she was 16 years old.[2]

Michel reported that, more recently, William had walked in on her several times while she was in the bathroom showering and her mother was at work. During one of these occasions, William saw Michel naked and "stared her down," refusing to leave the room until Michel screamed at him to get out. Michel told her mother about each of these incidents, but her mother did not do anything about them. In addition, Michel reported that William had started spanking her on the bottom in what felt like a sexual touch, similar to how he had touched Nelly when Nelly lived in the home. Michel repeatedly told her mother about William's behavior, but her mother either ignored her complaints or disbelieved her.

Ashley reported to social workers she felt safe with her mother, who had never been violent toward her. She did not, however, feel safe with William. As had Michel, Ashley stated William had come into the bathroom while she was showering and J.L. was not at home. Ashley acknowledged William had not behaved inappropriately toward her although there was something about his behavior in the bathroom she "did not like."

J.L. tearfully told social workers she recalled Michel complaining about William walking in on her in the bathroom, but thought she had resolved any problems by telling William he had "no business going in there" when Michel was in the bathroom. J.L. stated, "'I never knew that he walked in on her naked and saw her. I just don't remember

<hr />

[2] Nelly, who lived in another state, did not appear at the jurisdiction hearing. William filed written objections to Nelly's hearsay statements to social workers pursuant to section 355 and argued at the jurisdiction hearing that, without those statements, the allegations against William should be dismissed for insufficient proof. Michel and Ashley's counsel, as well as the Department, urged the court to deny the motion to dismiss, arguing Nelly's allegations of sexual abuse were supported by Michel's testimony and, to the extent Nelly's statements described more egregious instances of William's sexual abuse than reported by Michel, the petition could be amended according to proof. The court denied the motion. At the close of evidence the court ordered the petition amended according to proof to read: William "sexually abused [Nelly] from the age of eight/nine years old to the age of sixteen years old. On numerous prior occasions, [William] fondled [Nelly]."

. . . either one of them [(Michel or Nelly)] ever telling me anything. I don't remember them saying he did anything to them.'" J.L. also told social workers she believed Nelly and Michel's version of events and intended to initiate divorce proceedings against William.

William denied the incidents reported by Michel and Nelly. He stated he sometimes walked into the bathroom while others were showering, but that was understandable since the family lived in a one-bedroom, one-bathroom residence. He never saw Michel naked. He denied staring at her and refusing to leave until she screamed at him. He also denied sexually abusing Nelly in any way and stated Michel and Nelly had fabricated the alleged misconduct.

On August 23, 2013 the court found Michel and Ashley were persons described by section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (d) (sexual abuse) and (j) (abuse of sibling); and Michel was also a person described under section 300, subdivision (c) (serious emotional damage). The court declared Michel and Ashley dependent children of the court. Michel was removed from J.L. and placed under the care and supervision of the Department for suitable placement. Ashley was removed from William and placed with J.L. in J.L.'s home under the supervision of the Department. The court ordered William's visitation with Ashley and J.L.'s visitation with Michel be monitored. William was not permitted any visitation with Michel. The court ordered family reunification services for J.L. and William, including counseling, sexual abuse and sexual abuse awareness classes and parenting classes, and set a review hearing for February 21, 2014.

On February 21, 2014, after J.L. and William had appealed from the juvenile court's jurisdiction findings and order concerning Ashley, the court ordered family reunification services with respect to Michel terminated with all parties agreeing to place her into a permanent plan living arrangement. The judicial review hearing as to Ashley was continued for a contested hearing on the issue of termination of jurisdiction and entry of an appropriate custody and visitation order under section 362.4 to become part of the relevant family law file. On April 18, 2014 the court terminated its jurisdiction over

5

Ashley (to be effective April 24, 2014) and entered an order giving J.L. and William joint legal custody and J.L. sole physical custody of Ashley.[3]

## DISCUSSION

### *William's Appeal*

After William filed his notice of appeal, this court appointed counsel to represent him. Appellate counsel examined the entire record on appeal and then advised this court in writing that there are no arguable issues. (See *Phoenix H., supra,* 47 Cal.4th at p. 845 ["[c]ounsel appointed to represent an indigent parent on appeal from a ruling affecting parental rights does not have an obligation to challenge the judgment if there is no colorable basis for such a challenge"].) Appellate counsel advised William of her evaluation of the record, provided him with a copy of the appellate record and advised him this court may grant him permission to personally file a brief on his own behalf. On December 5, 2013 we notified William he had 30 days to submit any grounds for appeal, contentions or issues he wished this court to consider. (*Id.* at pp. 844-845 [if appointed counsel files a brief raising no issues on behalf of an indigent parent in a dependency action, the appellate court has discretion to permit the parent to personally file a brief].)

On January 2, 2014 William filed a two-page typed letter effectively arguing Michel was not credible and her testimony was rife with "contradictions, misinformation, lies and improbabilities." For example, Michel claims to have walked in on an act of abuse but "admits Nell[y]'s clothes were on and [she] did not see my penis at all." He also emphasizes the "shower incidents" Michel described are not credible because at first Michel told social workers he had walked in on her "*while* she was taking a shower, but later changed it to *after* she was stepping out of the shower." Finally, he points out that Nelly did not testify at the hearing.

William's letter brief does not identify any legally cognizable error in the juvenile court's order. William has not identified any material conflicts in Michel's testimony;

---

[3] We take judicial notice of the juvenile court's February 21, 2014 and April 18, 2014 minutes orders pursuant to Evidence Code sections 452, subdivision (d), and 459.

6

and, even if he did, the trial court resolved them in favor of finding Michel credible.  (See *In re Jordan R.* (2012) 205 Cal.App.4th 111, 135 [in determining whether jurisdiction finding is supported by substantial evidence, appellate court "do[es] not reweigh evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts"]; accord, *T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 47 ["[w]e defer to the juvenile court's findings of fact and assessment of the credibility of witnesses"].)  Because William has not asserted, much less made a prima facie showing, Michel's version of events was "physically impossible or inherently improbable" (cf. *People v. Elliott* (2012) 53 Cal.4th 535, 585 ["[u]nless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction"]; *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329 ["impeachment is not impossibility"]), his letter brief fails to show good cause that an arguable issue exists.  (*Phoenix H., supra,* 47 Cal.4th at p. 843.)  Accordingly, his appeal is dismissed.

### *J.L.'s Appeal*

J.L. does not challenge the juvenile court's jurisdiction findings that she had physically and emotionally abused Michel, failed to supervise her and failed to protect her from the risk of sexual abuse (§ 300, subds. (a), (b), (c), (d) & (j).)  She also acknowledges that dependency jurisdiction over Ashley was proper by virtue of the court's findings of William's sexual misconduct.  (See *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 ["the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent"]; *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554.)  However, she contends there was insufficient evidence to support the court's findings *her* actions or omissions also placed Ashley at risk of harm.

Although a finding as to one parent is sufficient to support jurisdiction, a reviewing court may exercise its discretion to reach the merits of a parent's challenge to the dependency court's jurisdictional finding when that finding could be prejudicial to the appellant because of its potential to affect current or future dependency proceedings or to have adverse consequences in another jurisdiction.  (See *In re Drake M.* (2012)

7

211 Cal.App.4th 754, 762-763 [when the outcome of appeal is "the difference between father's being an 'offending' parent versus a 'non-offending' parent," reviewing court should exercise its discretion to review jurisdictional challenge].) Here, however, as J.L. acknowledges, her arguments on appeal, even if meritorious, would neither alter the juvenile court's proper assertion of jurisdiction over Ashley nor, because of the unchallenged findings as to Michel, transform J.L. from an offending parent to a non-offending parent. Any stigma associated with the juvenile court's findings relating to J.L.'s physical abuse of Michel and failure to protect her from the risk of sexual abuse will not be reduced or eliminated even if J.L. were to prevail on this appeal. Accordingly, it is difficult to conceive of any adequate reason to exercise our discretion to consider J.L.'s arguments.[4]

## DISPOSITION

The appeals of William B. and J.L. are dismissed.


PERLUSS, P. J.


We concur:



WOODS, J.



ZELON, J.

---

[4] Our conclusion J.L.'s appeal is moot is reinforced by the juvenile court's April 21, 2014 order terminating jurisdiction over Ashley and awarding J.L. sole physical custody and joint legal custody of the child. As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.)