Filed 12/6/22 In re A.A. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | C094782, C095565 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JV-DP-2019-0000429 ) |
| Plaintiff and Respondent, | |
| v. | |
| G.Z., | |
| Defendant and Appellant. | |

In these consolidated appeals, appellant Guy Z., genetic father of the minor A.A., raises various challenges to the juvenile court's ultimate denial of his request to be found the minor's presumed or biological father in this dependency case, as well as to the termination of parental rights, and also claims error related to the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).

1

On the specific facts of this unusual case, where the juvenile court designated another man only as the minor's "biological father" based solely on the presence of his name on the birth certificate, and did not at any point clarify or substantiate that designation in the record provided to us, we are unable to find that the court's ultimate decisions as to Guy's various claims of parentage were *not* prejudicial error. Indeed, error appears throughout this record, as the respondent's representative admitted at oral argument and as we next explain. Although respondent argues that any and all errors were necessarily harmless, we cannot agree on this record. Thus, we are compelled to conditionally reverse the challenged orders of the juvenile court and remand for determination of both men's parentage and subsequent proceedings as necessary, including compliance with the ICWA.

## FACTUAL AND PROCEDURAL BACKGROUND

Minor A.A. was born in November 2014. Her mother was in an ongoing relationship (that appears to have included marriage at some point, one of many facts as to which the record is unclear) with a man named Richard at the time of A.A.'s birth.[1] Richard did claim the two were married; according to Richard, "[d]uring the course of [their] relationship together, [mother] conceived and gave birth to" the minor A.A.

---

[1] As we later discuss in more detail, the question of whether the couple was actually legally married and living together at the time of the minor's conception as well as her birth was not definitively answered during the proceedings at issue here. Thus, the juvenile court did not decide the applicability of statutes establishing presumptive paternity due to various degrees of marriage and corresponding cohabitation. (See Fam. Code, §§ 7540, 7611.) As the respondent's representative observed at oral argument, there were several questionable practices employed by the juvenile court in this case, including the court's (and the Agency's) failure to meaningfully investigate and analyze the applicability of these determination of parentage statutes. Although the court at one point noted it would have liked more information on the specifics of the relationship between mother and Richard, it does not appear to have actively sought more information, and the Agency apparently did not investigate the issue.

2

Richard also alleged that during their "short-term marriage" mother "had multiple affairs." Mother first reported to the social worker that Richard was the minor's genetic father, but a few weeks later reported that he was not.

A copy of the minor's birth certificate is in the appellate record and bears Richard's name as the father, as well as mother's name and signature; Richard's signature is not on the certificate. Although at one point in the record the social worker reported that mother told her Richard had signed a voluntary declaration of paternity as to the minor, no declaration of paternity as to A.A. is in the record.[2] Nor did the juvenile court ever find that such declaration was signed by Richard as to A.A.

*Initial contact*

The minor came to the attention of the San Joaquin County Human Services Agency (Agency) on May 9, 2019, when the Agency received a report that mother had tested positive for amphetamines and admitted to using methamphetamine throughout a recent pregnancy. The minor, then age four, was in mother's care at the time. As relevant here, mother initially reported that Richard was the minor's genetic father. On May 23, 2019, mother met with the social worker again. Guy Z. was with her (as was the minor) and claimed *he* was the minor's genetic father.[3] Guy claimed he had just been released after "serving a 2 1/2 year prison sentence." Mother confirmed that Guy was the

---

[2] As we discuss briefly *post*, only a father not married to the mother is required to sign a declaration of paternity in order to be listed on the birth certificate. (See Health & Saf. Code, § 102425, subd. (a)(4)(C); see also Fam. Code, § 7573, subd. (a)(1) [absent an exception not applicable in this case, only an unmarried woman who gave birth to the child and another person who is the genetic parent may sign a voluntary declaration of paternity as to that child].)

[3] Because, as we later discuss, the juvenile court initially (and confusingly) designated Richard only as the "biological" father, in this opinion we refer to the man who actually provided the sperm that fathered the minor as the "genetic" father. In this case, there is no dispute but that the genetic father of A.A. is the appellant Guy.

minor's genetic father and explained that she had identified Richard as such because he was named on the minor's birth certificate as the father. According to the social worker's report, mother alluded to Guy's earlier help with "parenting" the minor and also indicated that "they are getting that [i.e., the birth certificate] changed right now at the courthouse."

Guy did not yet have a place to live; he told the social worker he would provide her with his address as soon as he found stable housing and that he had no known Indian ancestry. Mother had also denied any known Indian ancestry. The social worker completed and filed ICWA-010 forms reflecting their denials.

*A petition is filed and Richard is found the "biological father"*

A Welfare and Institutions Code section 300 petition was filed on behalf of the minor on October 29, 2019, based on mother's substance abuse issues. The petition noted mother had named both Richard and Guy as alleged fathers, but that Richard was named as the minor's father on her birth certificate. No parent appeared at the October 31, 2019, initial hearing. As relevant here, the Agency reported it had tried to call mother, but her telephone number was disconnected. The Agency had left messages with the aunt with whom mother had been living and at two other numbers. It had tried to call Guy, but his telephone number was also disconnected. The Agency also visited the aunt's address and left business cards when no one answered the door.

The juvenile court found the Agency had exercised due diligence in attempting to locate the parents for the hearing. It ordered the minor detained, issued a protective custody warrant, and found Richard to be the minor's "biological" father without further inquiry, based on the fact that he was named as the father on the minor's birth certificate.[4] After the court made this designation as to Richard, Guy was apparently

---

[4] "Biological father" was not the correct designation for Richard based on the evidence then before the juvenile court; as became apparent later and was already in the record-- indeed, spelled out for the court in the petition--Richard was *not* the minor's biological

4

dropped from the list of alleged fathers requiring notice for subsequent hearings (there were other alleged fathers in this case as to mother's other children). The record does not reflect that service was attempted, much less accomplished, as to Guy from November 2019 through at least January 2021, when Guy first formally appeared in this case.

Mother appeared at the November 12, 2019, initial jurisdiction hearing and was appointed counsel; she was asked about possible Indian ancestry and provided with an ICWA-020 form. She appeared again at the November 26, 2019, continued jurisdiction hearing and the juvenile court sustained the petition.

*Guy is dismissed from the petition*

At a second jurisdiction hearing, held on December 3, 2019,[5] the court again sustained the dependency petition. Despite the fact that Guy was not receiving notice of these hearings, he was consistently listed as failing to appear on the minute orders prepared after the various hearings. At the December 3 hearing, the Agency reminded the court that it had "made [Richard] biological father of the minor" because he was "on the birth certificate," and told the court that it would be "too late for [Guy] to set aside paternity finding." The Agency asked the juvenile court to strike Guy's name from the petition and the court did so.

---

father per mother's representation of parentage to the social worker. Nonetheless, the juvenile court relied on its erroneous designation of Richard as the "biological father," which that court later found could not be challenged or supplemented, to dismiss Guy from the petition and ultimately the case. For the purpose of addressing Guy's paternity claims, it appears the court viewed Richard as the equivalent of a conclusively presumed father rather than merely a biological father, as we later explain.

[5] The juvenile court purported to "split" jurisdiction by parent, which we have held is procedurally incorrect. (See *In re A.J.* (2022) 77 Cal.App.5th 7, 14.)

*Further proceedings*

The social worker's January 21, 2020, report stated that mother had represented Richard had agreed to sign a declaration of paternity and was named on the minor's birth certificate. Due to Richard's criminal history and lack of bond with the minor, the Agency concluded providing reunification services to Richard (the provision of which was discretionary due to his designation only as the "biological" father) was not in the minor's best interests.

The juvenile court held the disposition hearing on January 21, 2020, where it adjudged the minor a dependent child, removed her from parental custody, and provided mother (and not Richard) with reunification services. The court reiterated that Richard was the biological father of A.A., but made no additional findings as to A.A. specifically. As relevant here, the court also found Richard the biological father of an older child, referencing a judgment signed in 2012. Once again, despite his having received no notice and having been dismissed from the petition, the minute order reflected that Guy failed to appear.

An amended petition was filed in February 2020; Guy was again included in the petition as an alleged and possibly biological father, and the petition continued to represent (as did the original) that "[a]s of October 29, 2019, [Guy] has no suitable home in which to care for the minor."

*Guy requests and is denied genetic testing*

In the Agency's July 2020 status review report, the social worker revealed that on May 28, 2020, Guy had contacted the Agency and requested genetic testing. He was incarcerated and on pandemic lockdown, but he wanted his family to visit with the minor. The status report also included a July 5, 2020, letter from Guy addressed to the juvenile court, claiming he was the minor's genetic father and requesting paternity testing and telephone contact. He claimed he had been an "active parent" when not incarcerated.

6

We were not provided with a transcript of the July 22, 2020 six month review hearing, but no action appears to have been taken at the hearing on Guy's multiple pending requests; Guy is listed in the minute order as "fail[ing] to appear." A report prepared in January 2021 for the subsequent status review hearing represented that Guy's requests were denied by the court at the July 22, 2020 hearing "because it was too late to contest paternity findings in this case."

Mother was present at the hearing; her reunification services were ordered continued, and a 12-month review hearing was set.

*Richard's petition to modify and Guy's first court appearance*

On December 3, 2020, Richard filed a JV-180 petition to modify pursuant to Welfare and Institutions Code section 388 (hereafter JV-180). He requested the juvenile court change its earlier order finding him the minor's biological father; he included a declaration attesting as relevant here that "during the course of [their] relationship together, [mother] conceived and gave birth to" the minor A.A.; Richard also alleged that during their "short-term marriage" mother "had multiple affairs." His declaration represented that he "did sign [A.A.'s] birth certificate" because he was told "signing it would help my then wife [mother] with needed services." He had completed a private DNA test in September 2020 and was not the minor's genetic father. He had not been involved in the minor's life, did not wish to participate in services, and did not want to pay child support.

The Agency opposed the petition to modify, arguing as relevant here that Richard had "admit[ted] he signed" the "birth certificate," on which he was listed, and that "he had two years after he signed the birth certificate" to challenge the "validity of these documents [*sic*]." The report prepared in advance for the January 20, 2021 status review hearing listed Guy and his address and explained that Guy had "informed the undersigned" social worker that he would be released from incarceration in December 2020 and would be present at the January 2021 hearing.

7

Guy did appear at that hearing, which was his first court appearance in this case. The juvenile court remarked that he was "the gentleman just released" and told him to "come here, sit at the table." At the hearing, Guy requested a DNA paternity test and the court told him that he was "late to the game." The Agency represented that "based on our review of the file and [] research on some statutory limitations, issue [*sic*] of paternity is proper and has been found in this case." The juvenile court asked if there was "a relationship with the child" and Guy represented that there was. The court told Guy that he was "coming in to this at the tail end" and that he had "been unavailable because of [his] incarceration." It added that Guy's "position [would] be determined by whether or not you have a relationship with [A.A.], the child knows who you are" as well as A.A.'s "best interest that we appoint you as bio father because of that fact."

Guy represented to the court orally that he had lived with A.A. before his 2018 to 2019 incarceration, as well as "before that when she was about three years old." The court told Guy to "file a petition after we determine [Richard's] situation." Guy indicated he would do so, and represented that he had been in contact with the social worker through "letters and calls" and had "always reached out and tried to be part of [A.A.'s] life." The court continued the matter to allow the parties to respond to Richard's JV-180. On January 22, 2021, Richard submitted DNA test results showing he was *not* the minor's genetic father.

*Hearing on Richard's petition*

The juvenile court held a hearing on Richard's JV-180 on March 1, 2021. It first announced Richard had "signed a birth certificate" as to the minor, and then heard the parties' arguments. The Agency's representative argued that Richard had "signed" the birth certificate and "there would have been witnesses there" and there was "no evidence that the hospital was not code compliant." Counsel for the minor announced that he supported *granting* Richard's petition, noting that the caretaker had advised counsel that the minor "knows [Guy] as her father and not [Richard]." In ruling, the juvenile court

8

noted that: "On the birth certificate, you have two years . . . to come back and change that" and ultimately concluded the request made by the petition was "untimely." Thus, Richard's petition to change the order finding him the minor's biological father was denied.

*Guy's request for a paternity test and subsequent litigation re: paternity*

At a hearing the following day, Guy appeared with *his* father; the juvenile court told Guy that Richard remained the minor's "legal" and "bio" father. The court observed that Guy claimed to have a relationship with the minor and that the minor knew Guy, also noting (without taking judicial notice of) the presence of a 2018 family law case that the court had "dug up," signifying to the court that father previously "had some interest" in parenting the minor.[6]

Mother had not progressed in services and the court terminated her services. The court agreed to order DNA testing for Guy and the minor and continued the matter for Guy's paternity claim.

---

[6] As we noted *ante*, mother had told the Agency in May 2019 that she and Guy were "in court" to try to change the birth certificate; this revelation by the juvenile court appears to corroborate mother's information in that regard. We now grant Guy's identical requests filed in both cases and deferred for consideration by this panel--with no opposition filed in either case--asking us to take judicial notice of attached materials pertaining to family law proceedings occurring in 2018 and 2019. The materials consist of multiple filings in case FL-2018-1876, beginning with an April 2, 2018, petition by Guy to establish a parental relationship with the minor and ending with a September 4, 2019, minute order showing only that a hearing was held wherein movant (Guy) failed to appear and the matter was "dropped from calendar." The materials also contain a "notice of motion and declaration for joinder" filed in that case on May 23, 2019 (the same day Guy appeared with mother at the meeting with the social worker, approximately five months before the dependency case was filed), seeking to join Richard in the family law case and claiming the minor "was conceived during the marriage" of mother and Richard and that Richard is "on [the minor's] birth certificate," but that Guy is the minor's father.

Guy appeared at the June 2, 2021 hearing; county counsel represented that genetic testing results had been received and that Guy was "the biological father."[7] Counsel continued: "The problem is Richard [] is also bio father. I believe he executed declaration of paternity. And we are outside the time lines for it to be set aside." The juvenile court appointed counsel for Guy to address paternity and continued the hearing to the next review hearing, then set for July 14, 2021. Guy signed an ICWA-020 form indicating he had no known Indian ancestry. The hearing was later continued to September 1, 2021, as a contested review of permanent plan hearing, after the Agency filed its report recommending a permanent plan of adoption with the minor's current caregivers.

On June 21, 2021, Guy filed a JV-180 requesting the order declaring Richard to be the minor's biological father be changed to declare Guy the biological father. On July 22, 2021, Guy filed a second JV-180, this time requesting in effect that the order declaring Richard to be the minor's biological father be vacated, and seeking an order declaring Guy the minor's presumed father. The petitions were based, respectively, on the new DNA evidence and Guy's allegations that he had held the minor out as his own since her birth, had raised her in his home when he was not incarcerated, and supported her emotionally and financially.

That same day, Guy also filed a JV-505 statement regarding parentage, stating he believed he was the minor's parent and requesting the juvenile court find him the presumed father. He claimed that he had told friends and family that the minor was his child since the time of her birth, and that he cared for her when he was not incarcerated, participated in activities with her, and provided her emotional and financial support.

---

[7] The Agency subsequently reported that, on May 14, 2021, LabCorp concluded, through DNA analysis, with 99.99% certainty, that Guy was the minor's genetic father.

10

County counsel opposed any change to Guy's status, arguing (incorrectly) that Richard had "*signed* [A.A.'s] birth certificate" (italics added) and also that he had been "ordered to pay child support for" her.[8] Counsel also asserted (without pointing to any evidence) that Richard was *not* married to mother, and therefore "had to have completed a voluntary declaration of paternity," which was "well outside the statutory timeline to set aside."

*Written ruling denying Guy's petitions and subsequent proceedings*

The juvenile court denied Guy's two JV-180 petitions in a single written order (without first holding a hearing) on August 24, 2021. The court initially noted that it had denied Richard's request to set aside the finding that he was the minor's biological father because "the two-year statutory period had lapsed." The court found Guy had demonstrated changed circumstances in that new DNA test results confirmed him to be the minor's genetic father, but Guy had not demonstrated that designating him as the minor's biological or presumed father would be in the minor's best interest.

Guy appeared at the review hearing on September 1, 2021; his father and sister were also present in court. The juvenile court informed him that it had already denied his "motion" and ordered him out of the courtroom. It dismissed him from the case and set a Welfare and Institutions Code section 366.26 hearing. Guy filed a notice of intent and petition for extraordinary writ from the September 1, 2021 orders. Another panel of this court denied that petition.

---

[8] This appears to have been one of multiple mistaken references by county counsel to an order regarding a different child; there appears no such order in the record as to A.A. At one point during the litigation in the juvenile court regarding Guy's petitions for modification, both Guy's counsel and county counsel misrepresented that an additional finding based on documentation had been made as to A.A. on January 21, 2020. In reality, as we have set forth above, the record shows the reference to a document reflecting a judgment of paternity related solely to different (older) child and indeed was dated in 2012, years before A.A. was born.

11

The Welfare and Institution Code section 366.26 hearing took place on December 29, 2021. That same day, Guy filed a request for continuance of the hearing based on lack of notice; the juvenile court denied the request as "untimely." The court terminated parental rights.

In case No. C094782, Guy appealed from the juvenile court's orders denying his Welfare and Institutions Code section 388 petitions seeking elevation to biological or presumed father status.[9] In case No. C095565, Guy filed a notice of appeal from the orders terminating parental rights. We consolidated case Nos. C094782 and C095565 for purposes of oral argument and decision. The case was fully briefed on August 31, 2022. Guy requested oral argument, which was held on October 19, 2022.

## DISCUSSION

Guy claims generally that the juvenile court erred in failing to provide him with notice of the dependency proceedings, in failing to declare him the biological or presumed father of the minor, and in dismissing him from the case. County counsel responds the court did not err and any error was harmless, but consistently represents incorrectly that the evidence showed Richard signed a voluntary declaration of paternity as well as the birth certificate. Neither of these assertions is supported by the record. In oral argument, county counsel admitted multiple errors were made by the juvenile court, but argued any error was harmless because the time to challenge the determination of parentage purportedly reflected by Richard's name on the birth certificate had passed.

---

[9] Guy's notice of appeal designates the juvenile court's September 2021 order denying his Welfare and Institutions Code section 388 petitions. But the petitions were denied in an order filed on August 24, 2021. On September 1, 2021, the juvenile court confirmed its previous denial of the petition and set a Welfare and Institutions Code section 366.26 hearing. Guy has asked that we construe his notice of appeal broadly, and as taken from the juvenile court's August 24, 2021 order denying his petitions. We shall do so. (See Cal. Rules of Court, rule 8.100(a)(2).)

As we next explain, because the juvenile court erroneously declared Richard the "biological father," but then treated him (when determining parentage) as a conclusively presumed father based *solely* on the fact that his name was on the birth certificate, and did not clarify or substantiate the designation at any point in the record provided to us, we cannot find there was no room for adjudication of Guy's competing claims of fatherhood.

If indeed there was room for adjudication of Guy's claims--that is, unless Richard's paternity was actually conclusively presumed--those claims should have been considered without regard to a perceived preliminary requirement to challenge or change Richard's paternity designation. Simply put, the juvenile court applied the incorrect analysis to Guy's request to be named the minor's biological or presumed father, because that court was apparently operating under the mistaken impression that Richard was the sole and permanent occupant of that position merely because Richard's name was typed on the birth certificate. The Agency repeatedly exacerbated the court's actual mistakes and legal misunderstandings by giving the court incorrect information in the Agency's reports and briefings as well as orally at hearings.

Because we cannot say these compounded errors were harmless, we conditionally reverse the juvenile court's orders with directions.

I

*Issues Raised in the Writ Petition*

Preliminarily, we briefly address the Agency's argument, made in case No. C095565, that Guy should not be permitted to raise the issues in this appeal that he raised in the extraordinary writ petition. As indicated in our December 21, 2021, order, Guy's "petition for extraordinary writ [was] denied for failure raise a substantive issue with respect to the September 1, 2021 order from which the notice of intent was taken. (*Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501.) All of the issues raised in the petition relate to the juvenile court's August 24, 2021 order which is an appealable order and the subject of the currently pending appeal in case No. C094782 [one of the two

13

appeals in this consolidated case]." Thus, we have not yet considered the merits of the arguments Guy now raises, and he may raise them in this proceeding.[10]

## II

### *The Juvenile Court's Determination of Richard's Parentage*

As we have explained, the juvenile court found Richard to be the minor's "biological father" very early in the dependency case, and then struck Guy from the petition, stopped providing him with notice of the proceedings, and refused to meaningfully consider his various claims of parentage, apparently based on its designation of Richard as the biological father. Thus we begin by analyzing the propriety of that designation.

A. *Applicable Law*

Generally, there are three basic types of fathers in dependency law: presumed, biological, and alleged. (*In re A.H.* (2022) 84 Cal.App.5th 340.) A presumed father is afforded the most rights in dependency proceedings (*ibid.*), followed by a biological father, who " 'has established his paternity but has not established his qualification as a presumed parent.' " (*Id.* at p. 342.) An alleged father is just that--a man alleged to be the father, but who has not yet established either presumed father status or biological paternity. (*Ibid.*) A presumed father is afforded standing, the appointment of counsel, and reunification services, while a biological father's access to appointed counsel and services is discretionary. (*Id.* at pp. 349-350.) An alleged father "has a constitutionally protected due process right to ' "be given notice and an opportunity to appear, to assert a position, and to attempt to change [his] paternity status." ' " (*Id.* at pp. 350-351.)

A father's name may be placed on a birth certificate if: 1) he is married to the child's mother; *or* 2) both parents have signed a voluntary declaration of paternity.

---

[10] The Agency does not contest Guy's standing to appeal from the termination of parental rights.

(Health & Saf. Code, § 102425, subd. (a)(4).) In November 2014, when the minor's birth certificate was prepared, that section provided in relevant part that: "If the parents are not married to each other, the father's name shall not be listed on the birth certificate unless the father and the mother sign a voluntary declaration of paternity at the hospital before the birth certificate is prepared. The birth certificate may be amended to add the father's name at a later date only if paternity for the child has been established by a judgment of a court of competent jurisdiction or by the filing of a voluntary declaration of paternity." (Former Health & Saf. Code, § 102425, subd. (a)(4).)

If the parents were *married and living together* at the time of the minor's *conception and birth*, the conclusive marriage presumption applies. (Fam. Code, § 7540, subd. (a).)[11] That presumption can only be challenged (as relevant here) within two years from the child's birth. (§ 7541, subd. (b).) If the requirements of section 7540 are not met, the presumption of paternity is not conclusive; if the parents are or have been married to each other--but not necessarily married and cohabitating at the time of conception and birth as required under section 7540, subdivision (a)--and the child is born during the marriage, or within 300 days after the marriage ended, the husband is a *rebuttably* presumed parent (§§ 7611, subd. (a); 7612, subd. (a)). As also relevant here, section 7611, subdivision (d), confers a rebuttable presumption of paternity on fathers who receive the child into their home and hold the child out as their own. If two conflicting presumptions arise under section 7611, or a section 7611 presumption conflicts with a claim by a person identified as a genetic parent, the presumption that on the facts is founded on the weightier considerations of policy and logic controls. (§ 7612, subd. (b).)

---

[11] Further undesignated statutory references are to the Family Code.

15

Other than through his marriage to the mother, a father's name is properly placed on a birth certificate by way of a signed voluntary declaration of paternity. This signed declaration is equivalent to a judgment of parentage and confers on the declarant all rights and duties of a parent. (§ 7573, subd. (b).) Section 7611 provides that an individual "is presumed to be the natural parent of a child if the person meets the conditions provided in . . . Chapter 3 (commencing with Section 7570) of Part 2"; that is, executed a valid declaration of paternity. (§ 7611.) Although section 7612, subdivision (a), sets forth the standard for rebutting presumptions arising under section 7611, that subdivision expressly exempts from its language a presumption arising from a declaration of paternity. (§ 7612, subd. (a) ["Except as provided in . . . Chapter 3 (commencing with Section 7570) of Part 2, . . ."].) In other words, the judgment of parentage conferred by a such a declaration is a conclusive presumption of paternity. Although its judgment of paternity is not rebuttable, a voluntary declaration of paternity may be set aside, but only within two years of its signing. (§§ 7646, subd. (a)(2), 7576; *County of Orange v. Superior Court* (2007) 155 Cal.App.4th 1253, 1259-1260.)

B. *Analysis*

As we have described, the juvenile court first determined Richard to be the "biological" father based on the presence of his name on the birth certificate. Richard claimed in his declaration that he "signed" the birth certificate and made no mention of any other paperwork *as to A.A.* There was evidence of additional paperwork as to a different, older child; as we have described, the reference surfaced later in the litigation, but the referenced paperwork had nothing to do with A.A. Despite the fact that the birth certificate is in the record and does not bear Richard's signature (or even a signature line for a second parent), the Agency consistently represented that Richard had signed the birth certificate. On appeal, county counsel continues that fiction in their briefing (and adds a voluntary declaration of paternity as a document signed by Richard, even though the juvenile court never made that finding; indeed, the court never referenced such

16

declaration in the record provided to us). Although we acknowledge that a name's mere listing on a birth certificate *may* constitute prima facie evidence that a declaration of paternity was completed (see *In re A.H., supra*, 84 Cal.App.5th at p. 406), this is not the case in the present situation, as we next explain.

As we have outlined above, how a father's name came to be on the birth certificate may signal whether his presumption of fatherhood is conclusive or rebuttable. If Richard indeed signed a voluntary declaration of paternity, his parentage is a conclusive presumption that is not rebuttable and can only be challenged within a two year period from the declaration's signing. That conclusive presumption cannot be trumped by other provisions that define presumed fatherhood. Thus, if indeed a signed declaration of paternity enabled Richard to be named as A.A's father on her birth certificate, and no one successfully set it aside within two years of its signing, Richard's attempt to do so in the juvenile court was untimely and the conclusive presumption stands. However, the evidence before the juvenile court on this issue was purely speculative and does not support the finding in its current state.

Aside from mother's one mention of such declaration (as reported by the social worker in her report, but not as a quote, meaning we cannot be certain mother used this term), there is no indication in the record that any such declaration was signed. Further, as set forth above, both Guy and Richard claimed mother and father were *married* at (Guy) or around (Richard) the time of the minor's conception and birth. We see no indication in the record that mother was asked to confirm or deny those assertions. If the two indeed were married, *no declaration of paternity was necessary* for the placement of Richard's name on the birth certificate. Thus, there may be no declaration of paternity in the record because there was no need for one to be prepared. Because the record was never fleshed out on these issues, we simply do not know.

17

In sum, if Richard and mother were married and living together at the time of the minor's conception and birth, the conclusive marriage presumption applies. (§ 7540, subd. (a).) If they were unmarried and thus required to sign a declaration of paternity in order to secure Richard's name on the birth certificate, and there exists such a declaration that was not challenged within two years of its signing, the judgment of paternity is final and Richard's paternity cannot be challenged. (§§ 7646, subd. (a)(2), 7576.) But if they were not married and living together at the time of conception, yet the minor was born during the marriage or within 300 days after the marriage ended, Richard would be a *rebuttably* presumed parent. (§ 7611, subd. (a).) Under this circumstances, the presumption could be challenged by a competing claim of parentage, such as Guy's claim of genetic fatherhood and request for biological or presumed father status. (§ 7612, subd. (b).)

III

*The Juvenile Court's Determination of Guy's Parentage*

There is no dispute but that Guy is the genetic parent. If there was no conclusive presumption of paternity in place, Guy was eligible to be designated the minor's biological father without meeting any additional requirements. Although his access to appointed counsel and reunification services would be at the discretion of the juvenile court, at the very least he would be entitled to designated paternity status in the minor's dependency case and an opportunity to argue for counsel, services, and visits.

As we have discussed above, if Richard were properly (and with evidentiary support for the finding) designated as a conclusively presumed father, absent an exception not relevant here (see § 7612, subd. (c)), Guy would be precluded from asserting his paternity status in this dependency case even though he is A.A.'s genetic father. If that indeed is the situation here, Guy's attempts to establish his paternity in this dependency case would have been futile regardless of the error in classifying Richard as a "biological father" (who was treated as a conclusively presumed father for purposes of

18

Guy's potentially competing claim) as well as the other alleged errors. However, if Richard's paternity status was something less than conclusively presumed, Guy's claim of paternity should not have been foreclosed. Although at some point one claim would need to be chosen over the other by the juvenile court, initial conflict is contemplated and addressed under the applicable statutory scheme.

For example, if the presumptive paternity that attached to Richard through his marriage to mother is rebuttable, because he was incarcerated--and thus not living with mother--at the time of the minor's conception, and if Richard did not sign a voluntary declaration of paternity (because he was married to mother at the time of the birth), there was no conclusive presumption in place, and Guy should have been permitted to remain an alleged father on the petition and given the chance to elevate his paternity designation to biological or presumed during the proceedings. As we have described above, the court would then be required to resolve any competing paternity claims.

Due to the paucity of findings regarding the parents' marital status and birth certificate, it is not at all clear under what provision Richard's parentage was determined. And we do not see evidence in the record that would support an implied finding of conclusively presumed parentage as to Richard. We *do* see evidence in the record that the minor knew Guy as her father and he held her out as his own and participated in her parenting. Indeed, the minor was with mother and Guy when Guy first met with the social worker in May 2019. Thus, we cannot say that the resulting error in the adjudication of Guy's competing claims of parentage was harmless. We must conditionally reverse the orders from which Guy appeals. (See *In re A.H., supra*, 84 Cal.App.5th at p. 373 ["[W]ith regard to the question of presumptive parenthood, we are confident the record is *incomplete* given the nature of all the collective errors involved here"].)

19

IV

*Scope of Conditional Reversal*

Although Guy argues that, as a result of the Agency's failure to properly notice him of *any* proceedings past detention, the jurisdictional and dispositional orders must also be reversed in this appeal from the subsequent JV-180 orders and termination of parental rights, we disagree.

"One of the most fundamental rules of appellate review is that the time for filing a notice of appeal is jurisdictional. '[O]nce the deadline expires, the appellate court has no power to entertain the appeal.' " (*In re A.O.* (2015) 242 Cal.App.4th 145, 148.) The first appealable order in a dependency case is the dispositional order or judgment. (*Ibid.*; Welf. & Inst. Code, § 395.) A challenge to the jurisdictional findings must be raised in an appeal from the dispositional order. Any order subsequent to the dispositional order, except for orders setting a section 366.26 hearing which must be first challenged by a timely writ petition, may be appealed as from an order after judgment. (Welf. & Inst. Code, §§ 366.26, subd. (*l*), 395; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1149.) "A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." (*Meranda P.*, at p. 1150.)

Guy did not appeal from the disposition orders, nor did he appeal from any of the orders entered at or after his first appearance in January 2021 until the August 24, 2021 order denying his JV-180 petitions. We understand Guy's argument that we should vacate the (now final) jurisdiction and disposition orders because the noticing errors fundamentally undermined the statutory scheme and prevented him from meaningfully engaging in the proceedings and availing himself of the protections of the dependency scheme. But Guy admits he did not specifically ask the juvenile court to vacate the entirety of the findings and orders made at the jurisdiction and disposition hearings and sought only to have the prior paternity findings set aside. He argues he asserted the

20

notice deficiency in connection with his request for reunification services and alternatively claims ineffective assistance of counsel.

Guy did not claim the noticing errors resulted in a denial of due process in the juvenile court. Welfare and Institutions Code section 388 specifically permits JV-180 petitions to "change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." Yet neither of Guy's petitions requested the juvenile court vacate the jurisdiction orders or disposition orders in their entirety, or even mentioned, let alone developed, a due process argument. By failing to litigate this issue or request a ruling from the juvenile court, Guy failed to preserve the issue for appeal. (*People v. Ramirez* (2006) 39 Cal.4th 398, 472-473; *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686 [appellate courts in a dependency proceeding normally may not consider an objection raised for the first time on appeal].) We do not agree that the interests of justice require we make an exception to the waiver or forfeiture rules under the present circumstances, for reasons we next address. (See *In re Janee J.* (1999) 74 Cal.App.4th 198, 208.)

The juvenile court sustained the dependency petition at the November 26, 2019, jurisdiction hearing, finding the allegations regarding *mother* true. While Guy now seeks reversal of the jurisdiction orders to challenge the jurisdictional findings as to him, the only allegations in the petition concerning Guy were that mother believed he was A.A.'s biological father and that he had no suitable home for the minor. It does not appear the juvenile court made any findings as to Guy, and he was stricken from the petition days after that hearing. In any event, Guy fails to even *suggest* he could have challenged and overcome the allegations relating to mother. A jurisdictional finding good against one parent is good against both. In other words, the minor is a dependent if the actions of *either* parent bring them within one of the statutory definitions of a dependent. (*In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554.) Thus, even if Guy were able to refute the allegation that he did not have a suitable home in which to care for the minor,

21

there is no fundamental fairness reason to relitigate jurisdiction.

With respect to Guy's contention that the interests of justice require we vacate the now final *dispositional* orders, we do not find such extraordinary measures necessary to assure that Guy may avail himself of the protections of the dependency scheme. He argues that, given proper notice and representation, he could have had paternity testing facilitated, argued for reunification services, and presented evidence to establish presumed parent status. But none of these asserted prejudices require reversal of the dispositional orders here. Paternity testing has now been completed. If Guy is found, on remand, to be the minor's presumed father or entitled to reunification services, he will be provided with services under the specifics of our disposition here. If he is entitled to placement or to be heard as to preferred placements as a presumed parent, he may be heard and a change in placement may be ordered. But mother's dispositional orders were not affected by the lack of notice to Guy. A new disposition hearing is not warranted on this record.

Finally, it is clear on this record that it is not reasonably probable the juvenile court would have vacated the now final orders at issue had the request been made. Thus, Guy cannot establish he received ineffective assistance of counsel. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180 [we may reject a claim of ineffective assistance if the party fails to demonstrate that, but for trial counsel's failings, he would have received a more favorable result].) We decline to disturb these final orders that are not properly before us on this appeal.

V

*The ICWA*

We next address Guy's argument that the orders terminating parental rights must be reversed because the Agency did not ask his relatives about possible Indian ancestry. Although the Agency represented that Guy was asked about Native American heritage and responded he knew of none, and later Guy completed an ICWA-20 form stating the

22

same, the record reveals no other inquiry; it *does* reveal that Guy appeared in court with his father twice, as well as his sister once. Despite the fact that these appearances occurred after Guy was proven the minor's genetic father through testing, there was apparently no additional inquiry by the juvenile court or the Agency regarding application of the ICWA. The court and the Agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); Welf. & Inst. Code, § 224.2, subd. (a).) Although the argument could be made that the error was harmless given Guy's denial of heritage, because it appears the court and Agency did not properly perform their duties of inquiry even when Guy's immediate relatives were available in court and it was clear Guy was a genetic parent, we will order compliance with the ICWA as part of our conditional reversal of the orders at issue here.

VI

*Reassignment*

Finally, Guy asks that we direct that this matter be assigned to a different judicial officer on remand. He bases his request on his conclusion that the court here was "less than careful" in reviewing the evidence and law as it related to his rights as an alleged father, and that the court misunderstood the relevant law. But these reasons alone are not grounds for reassignment.

Code of Civil Procedure section 170.1, subdivision (c) states: "At the request of a party . . . an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court." We will consider and reject the request. Although errors were committed here, as we have outlined above, they do not "suggest[] a whimsical disregard" of the complex statutory scheme we have discussed in this opinion. Nor do the mistakes made here suggest that the court here was "unaware of the most fundamental statutory and case law requirements [of that statutory scheme]."

23

(*People v. Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1561.) Erroneous rulings are not themselves sufficient evidence of bias to warrant removal. (*Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59-60.) Further, as we have discussed, the Agency exacerbated the court's errors by providing it with incorrect information. Our review of the record does not reveal any evidence of prejudice or bias on the part of the juvenile court judge who entered the orders at issue here such that disqualification is warranted on remand. Accordingly, we conclude the interests of justice do not warrant an order requiring that future proceedings be heard and decided by a different judicial officer.

## DISPOSITION

The juvenile court's August 24, 2021 findings and orders denying appellant's petitions for modification, the subsequent September 1, 2021 order dismissing appellant from the case and setting the Welfare and Institutions Code section 366.26 hearing, and the December 29, 2021 order terminating parental rights as to the minor A.A. are conditionally reversed.

On remand, the juvenile court is directed to determine whether Richard is the minor's presumed father and, if so, under what statutory provision(s). If Richard is found to be the conclusively presumed father, the juvenile court shall reinstate its orders, subject to further ICWA compliance as set forth below. If Richard is not found to be the minor's conclusively presumed father, the juvenile court shall make further findings as to appellant's claim of parentage. If appellant requests and qualifies for appointed counsel, counsel should be provided to him. If the court finds appellant to be the minor's presumed parent or biological parent for whom discretionary reunification services should be provided, the court's August 24, 2021, September 1, 2021, and December 29, 2021 orders remain reversed and the juvenile court shall proceed accordingly.

24

On remand, the juvenile court shall also require compliance with and make new findings in accordance with the ICWA, as described in this opinion and under applicable law. If, on remand, the juvenile court determines the ICWA applies, the orders terminating parental rights remain reversed and the juvenile court shall proceed in accordance with the ICWA. (25 U.S.C. § 1914; § 224, subd. (e).)

 

_____/s/_____
Duarte, J.

We concur:

_____/s/_____
Robie, Acting P. J.

_____/s/_____
Krause, J.